[Civ. No. 2329. First Appellate District.—May 1, 1918.]

JOE M. PARK et al., Appellants, v. PACIFIC FIRE EXTINGUISHER COMPANY (a Corporation), et al., Respondents.

STREET LAW—INSTALLATION OF ELECTRIC LIGHTING SYSTEM—IMPROVEMENT ACT OF 1911.—The installation of an electric street lighting system in a municipality is authorized by the Improvement Act of 1911 (Stats. 1911, p. 730), notwithstanding the title of the act provides for "work" in and upon streets, as subdivision 2 of section 79 in defining the word "work" was intended to include street-lighting systems.

ID.—ENACTMENT OF PUBLIC UTILITIES ACT OF 1913—IMPROVEMENT ACT OF 1911 NOT REPEALED BY IMPLICATION.—The Improvement Act of

1911 covering street improvement alone was not repealed by implication by the Public Utilities Act of 1913 covering the acquisition of public utilities.

Id.—Creation of Street-lighting System—Procedure Under Improvement Act of 1911—Right of Municipality.—While street lighting is a municipal affair, where the municipality has not provided a complete procedure for the creation of a street-lighting system as empowered to do by its charter, it may follow the provisions of the Improvement Act of 1911.

Id.—Connection of Wires With Electric Distributing System of Public Utility—Constitutional Amendment Not Violated.—The improvement of streets by the construction and installation of electroliers and a conduit system for the purpose of lighting such streets, cost of the improvement to be made a charge upon the property within the district, does not violate section 1 of article XIV of the amendments to the constitution of the United States, in providing that the electroliers be wired and connected by the underground system of conduits with a public utility company's lines, since the improvement does not become the property of the utility company, but the property of the city.

Id.—Reference to Streets to be Improved—Insufficiency of Resolution of Intention.—A resolution of intention for improving streets in installing an electric lighting system, not naming the streets, and providing that the work was to be done according to certain specifications which did not name the streets, but referred to plans attached which contained a legend designating colors by which the proposed improvements could be located, does not comply with the requirements of section 3 of the Improvement Act of 1911, providing that the resolution of intention shall refer to the street to be improved by its lawful or official name or by the name by which it is commonly known.

APPEAL from a judgment of the Superior Court of Alameda County.   William H. Waste, Judge.

The facts are stated in the opinion of the court.

Richard B. Bell, and R. M. F. Soto, for Appellants.

Wilson & Haines, O. C. Wilson, Martin L. Haines, Frank D. Stringham, and B. D. Marx Greene, for Respondents.

BEASLY, J., *pro tem.*—In this case the plaintiffs resist the action of the city of Berkeley in ordering the improvement of certain streets of that city by the construction and installation of electroliers and a conduit system for the purpose of

37 Cal. App.—8

lighting its streets.  The specific relief sought is injunction *pendente lite* against the performance of a contract let for the above purpose, and a final judgment that this contract is void. The judgment of the trial court was for the defendants, and this appeal is from that judgment on the judgment-roll, consisting of the complaint, answer, findings, and judgment.

The work was to be done under the Improvement Act of 1911 and its amendments, [Stats. 1911, p. 730], and in accordance with specifications previously adopted by the city council generally covering such work.  A resolution of intention, adopted by the council on December 3, 1915, provided that 232 electroliers be installed within the limits of a district fully described, the cost of the improvement to be made a charge upon the property within the district, and that the electroliers be wired and connected by an underground system of conduits with the electric distributing system used for the lighting of the streets of Berkeley, the work to be done in accordance with the specifications above referred to and adopted by a resolution of the council.  These specifications were referred to in the resolution of intention by number, and were by the language thereof specifically incorporated therein and made a part thereof; and the resolution also provided that the work be done in accordance with the Improvement Act of 1911 and its amendments, as above stated.  The specifications described the work to be done more definitely and more at length than the resolution of intention, but they do not add anything to its provisions except that they provide for the connection of the lighting system of the city with the Pacific Gas & Electric Company's lines.

The findings were in accordance with the complaint, determining the foregoing facts as therein alleged except as to the posting of notices of the improvement and the affidavit of posting, which in the view we take need not be noticed.

The trial court held the contract valid.

The first objection relied upon by the appellants is that the improvement described in the resolution of intention is not authorized by the Improvement Act of 1911 as amended.

Section 2 of that act, under which the city of Berkeley undertakes to do this work, if valid, empowered the city council to order the construction or reconstruction upon its streets of poles, posts, wires, pipes, conduits, lamps, and other suitable or necessary appliances for the purpose of lighting its

streets. This, it is claimed, is repugnant to the provisions of section 24, article IV, of the constitution, to the effect that every act of the legislature shall embrace but one subject, which subject shall be embraced in its title. The specific ground of the objection under consideration is that the act decribes all the work therein contemplated as street work, and that the work provided for by this resolution of intention is neither street work nor street improvement.

The title of that act in so far as it is involved here is this: "An act to provide for work in and upon streets," etc.; and if the word "work" as used in the act does not include this species of improvement, the contract in issue here must be held invalid. Counsel cites a number of cases in some of which at least it is held that street work does not include the installation of a lighting system. Typical of those cases is *Electric Light & Power Co.* v. *San Bernardino,* 100 Cal. 348, [34 Pac. 819], wherein it is held that the term "street work" is a phrase in common usage and has a well-defined meaning, and, says the court in that case, "the words mean exactly what they indicate upon their face, namely, work upon a street, work in repairing or making a street"; and it was there held that the installation of an electric lighting system, differing considerably, however, from the system in question here, was not street work within the meaning of those words. The case did not arise under the statute of 1911, but under the general Municipal Incorporation Act as amended in 1891 (Stats. 1891, p. 54).

The other cases cited by appellants are of similar import. None of them, however, arose under the act of 1911; indeed, they were all decided before that year. We do not think it necessary to analyze and distinguish these cases, although this might conceivably be done, for the legislature has in effect in the act of 1911 defined what it meant by the words in the title thereof. In subdivision 2 of section 79 of said act (Stats. 1911, p. 766) is the following provision: "The words work, improve, improved, and improvement, as used in this act shall include all work mentioned in this act, and also the construction, reconstruction and repairs of all or any portion of said work." Read in connection with the provisions of section 2 of the act, this provision shows clearly that the legislature had in mind the inclusion of everything contained in section 2 thereof when it used the word "work" in its title.

The purpose of section 24 of article IV of the constitution is to protect the members of the legislature as well as the public against fraud from deceitful and misleading titles; and if the title is of such a character as to mislead the public or the members of the legislature as to the subject embraced in it, then section 24 applies. But it is not necessary that the title of an act should embrace an abstract or catalogue of its contents; and where the title of an act is not misleading, the act will not be held void simply because of the fact that its title does not so catalogue or schedule every item contained therein.

These propositions are so well settled as to need no citation of authority, and, indeed, are quotations from numerous cases decided by the supreme court. That the legislature was not misled by the use of the word "work," but intended to include a provision in the act for the installation of a street-lighting system, is quite apparent from the language above quoted. The legislature had authority to so define the words used in the title if it chose to do so; and, therefore, as it has done so and it is apparent that it had these matters in mind, the court will not hold this act unconstitutional because the legislature did not itemize a lighting system as a part of the street work. Indeed, a lighting system is as necessary to the convenient use of streets in the present age in a city the size of Berkeley as is the pavement of the street itself; and the tearing up of the streets to place conduits therein for the purpose of laying wires for conducting electricity for lighting purposes is quite as much street work, it seems to us, as any other work upon a street.

It is next contended that the Improvement Act of 1911 has been suspended by the Public Utilities Act of 1913 (Stats. 1913, pp. 421, 429). The act of 1911 covers street improvement alone. That of 1913 covers the acquisition of public utilities. As these two purposes are intimately connected with each other, the provisions of the latter statute overlap the former, but they are not so inconsistent with it as to repeal it; and they are certainly not so repugnant that it must be held that the Public Utilities Act of 1913 repealed the Improvement Act of 1911 by implication. There is, indeed, a strong reason for concluding that the legislature had no such intention when it enacted the Public Utilities Act, for in that act it expressly repealed the Improvement Act of 1905 [Stats. 1905, p. 564], and at the same time failed to mention the Improve-

ment Act of 1911. It must, therefore, be concluded that the legislature intended to repeal the act of 1905, but did not intend to repeal the act of 1911.

The appellants next contend that the city of Berkeley had exclusive authority to provide for the lighting of its streets as a municipal affair under charter provisions, and that, therefore, the Improvement Act of 1911 does not apply to that city.

Street lighting is a municipal affair; but the charter of the city of Berkeley, while conferring power upon the city to adopt a complete procedure for the creation of a system of street lighting, does not contain such a procedure. This is conceded. The city has power to provide such general scheme; but not having done so, it is governed by general law in that respect, and may in this case follow the provisions of the Improvement Act of 1911. (*Fragley* v. *Phelan*, 126 Cal. 383, [58 Pac. 923].)

The next objection to this proceeding is that the proposed assessment for the improvement described in the resolution of intention, if made, would violate the constitution of the United States. It is claimed that it will constitute a part and parcel of the public utility now owned and controlled by a public service corporation, namely, the Pacific Gas and Electric Company, mentioned in the resolution of intention. But this does not appear to be so. It seems to us that the proposed improvement will become the property of the city of Berkeley, and that the only connection that it has with the Pacific Gas and Electric Company is a physical connection with that company's lines for temporary convenience. We do not see that this in any way violates section 1 of article XIV of the amendments to the constitution of the United States.

The final attack upon this contract and the proceeding upon which it is based is grounded upon the following considerations: It is provided in section 3 of the Improvement Act of 1911 that before ordering any work to be done or improvement made the council shall pass a resolution of intention so to do, "referring to the street by its lawful or official name, or the name by which it is commonly known." This resolution does not name or refer to the streets to be improved; but it is contended by the respondents that the specifications and plans for the work referred to therein do so, and that this fulfills the requirement in question. The reference relied on is in

these words: ''All the work to be done in accordance with the specifications contained in resolution adopting specifications #317 N. S. for the construction of single lamp or electroliers and conduit system.'' The specifications do not contain the names of the streets nor any reference to them, unless the provision of the specifications that the ''plans attached hereto, sheets No. 1, 2 and 3, are to be considered with and are hereby made a part of these specifications,'' are sufficient to comply with the statute. These plans are engineering prints, and are marked ''Lighting District No. 1, showing location of electroliers and conduits, Berkeley, California,'' and they contain a legend explaining the colors by which the location of the electroliers, conduits, and other details of the work are shown.

In construing this portion of the proceeding the purpose of the provision that the streets shall be named in the resolution of intention must be taken into account. That purpose seems to be the giving of information to the property owners as to the intention of the city council to improve the street in front of their property, or some other streets, the expense of which will be made a burden upon their property by taxation. Section 6 of the act provides that any owner of property liable to be assessed for the work may make written protest against the proposed work, or against the extent of the district to be assessed, or both, and provides the method by which such protest shall be made to the council. The method which the property owner must follow under this proceeding as above outlined in order to ascertain whether his property is to be made liable for this street improvement is first to examine the resolution of intention, which would advise him that the property within a certain district was to be taxed for a certain improvement upon certain streets; but these streets were not named in the resolution of intention, and therefore he must look further in order to ascertain upon what streets the improvement is proposed to be made. Accordingly, he must consult the specifications, and in the specifications he would find nothing except a reference to a map or plan, and this map or plan is an engineering plan; and while in this case simple and comparatively easy to understand by a person in the least accustomed to reading such documents and interpreting them, it would not be easy, and perhaps would not be possible, for many persons who might

own property within a district such as this in which improvements upon the streets were to be made, to ascertain by an inspection of the plan exactly what particular streets were to be improved. Indeed, this plan only purports to show the approximate location of certain portions of this work, namely, the feeder risers; and if it can be held that the reference herein is sufficient, and that these plans in themselves were notice of the points at which this improvement was to be made, a plan approximating the location of all the work might be sufficient to fulfill the measure of the statutory requirement.

With the contention that this is so we cannot agree. We think that the city council should mention the streets to be improved by their lawful or official names or the names by which they are commonly known, in the resolution itself; or, at the very least, should plainly state in the specifications the names of the streets to be improved, so that, without the trouble of inspecting engineering plans, the property owner might know exactly for the improvement of what streets his property is to be assessed. It seems to us that there is no excuse for not following this simple requirement of the statute; and further, that the rule adopted in construing the Vrooman Act [Stats. 1885, pp. 160, 161], by which a reference in the resolution of intention to plans and specifications on file for the purpose of supplementing the general description of the work in the resolution itself, would be unduly stretched by permitting such a reference as was attempted here.

We have thought proper to consider all the points raised in view of the fact that the city council of Berkeley may still wish to proceed with this work under a resolution of intention sufficient in form for that purpose within the views herein expressed.

The judgment is reversed.

Kerrigan, J., and Zook, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 31, 1918, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 27, 1918.