[L. A. No. 14323. In Bank.—September 29, 1936.]

CHARLES H. ROBERTS, Appellant, v. THE CITY OF LOS ANGELES (a Municipal Corporation) et al., Respondents.

480

Hewitt & Anderson, Hewitt, McCormick & Crump, Leslie R. Hewitt and C. L. Price for Appellant.

George W. Crouch, as *Amicus Curiae* on Behalf of Appellant.

Ray L. Chesebro, City Attorney, Frederick von Schrader and Leon Thomas David, Assistant City Attorneys, and Jerrell Babb and Robert J. Stahl, Deputies City Attorney, for Respondents.

SEAWELL, J.—Plaintiff, the owner of lots Nos. 13, 14 and 15, all in Madeline tract, city of Los Angeles, brought this action in the Superior Court of the County of Los Angeles, praying for judgment for the cancellation of assessments levied in the sums of $29.69 on lot No. 13 and $29.80

on each of the other two lots for street lighting purposes. Said assessments were subsequently confirmed by the city council.

Ordinance No. 63060, declaring the city's intention to order the necessary electric current to be furnished for a period of fourteen months for lighting purposes, was approved February 26, 1929, and became effective March 9, 1929. Ordinance No. 63814, ordering the necessary lighting posts and appliances and furnishing the electric current as in said ordinance and resolution of intention provided and inviting sealed bids or proposals, was approved May 13, 1929. Judgment went against plaintiff and the cause is here on appeal. Plaintiff makes the contention that the assessments are void for the following reasons: That the furnishing of electric current for the lighting of a public street is not a subject embraced in the title of Act 5215 (Public Works and Utility Act) approved June 6, 1913, Deering's General Laws, 1931, volume 2, pages 2679–2687, under which the city asserts its power to inaugurate and maintain its lighting system on said public street; that certain items which are not taxable against the lands in a proceeding under said lighting act are included in the assessment, and said items, not being segregated from those which may be properly included in said assessment and which appear to be inseparable from the former, render the entire assessment void; that the furnishing of electric current for lighting public streets, being an impermanent and evanescent thing, is a local improvement, if an improvement at all, for which an assessment against private property cannot be made; that almost all of the total assessment for said lighting improvements is for the lighting of a portion of a main traffic artery and the lighting of said main artery is primarily a benefit to the entire city and all of its inhabitants and that the lands fronting on said street receive no greater benefit by reason of said improvement than do other lands within said improvement district. Other objections made to the proceedings taken under the act will be noticed as their importance may require.

We will first consider the objections taken by virtue of article IV, section 24 of the state Constitution, which provides that "if any subject shall be embraced in an act which shall not be expressed in its title, such act shall be void . . . as to

so much thereof as shall not be expressed in the title''. The objection raised is that the title is deficient in that the power to furnish electric current and impose the charges therefor on private property is not expressed in the title. of the act. The title in question (Gen. Laws, *supra,* pp. 2679–2687, 1931, Act 5215) reads as follows: ''An act to provide for the acquisition, installation, construction, reconstruction, extension, repair and maintenance by municipalities of waterworks, electric power works, gas works, lighting works, and other public works and utilities; for the assessment of the cost and expenses thereof upon the property benefited; and for the issuance of improvement bonds . . . and to repeal an act entitled 'An act to provide for the lighting of public streets, lanes, alleys, courts and places in municipalities, and for the assessment of the costs and expenses thereof upon the property benefited thereby'.''

Section 1 of said act provides, ''Whenever the, public interest or convenience may require, the city council of any municipality in the State shall have full power and authority to order . . . lines, conduits, and other necessary works and appliances, for the purpose of providing electric power service; . . . poles, posts, wires, pipes, conduits, lamps and other necessary works and appliances, for lighting purposes; or any of said improvements, or any works, utility or appliances necessary or convenient for providing any other public service to be installed, constructed, reconstructed, extended, repaired or maintained in and along the whole or any part of any one or more of the public streets, alleys, or other places in such municipality or in and along any right of way owned or held by said municipality for the purpose: also to order any works or appliances already installed in or along the whole or any part of any one or more of the public streets . . . in such municipality and which are necessary or convenient for the purpose of supplying such municipality or its inhabitants with water, electricity . . . or other means of heat, illumination or power or with any other public service . . . necessary or convenient for the use and operation thereof, to be acquired, or to order the use of any such works, appliances and other property to be acquired; also to *order electric current,* gas or other illuminating agent to be furnished for such power or lighting service in the

manner or under the proceedings hereinafter described.''
(Italics supplied.)

Said act provides that before any improvement is made, the city council shall adopt a resolution of intention to do the same, briefly describing the proposed improvement and specifying the exteriors of the boundaries of the district to be benefited and to pay the costs and expenses thereof. The city council may in its discretion (which was done in the instant case) order in said resolution of intention that a certain portion or percentage of the costs and expenses of said improvement, the amount of which shall be specified in said resolution (in the instant case the amount specified was $2,885), shall be paid out of the treasury of the municipality from such fund as the city council may designate. Said proposed improvement may include any or all of the different kinds of work mentioned in section 1 of said act, provided that the maintenance of appliances or the furnishing of electric current or other illuminating agent shall be for a period stated in the resolution of intention, but not exceeding two years. In the instant case it is for a period of fourteen months. The council in the resolution shall refer the proposed improvement to the board, commission or officer having charge and control of the public improvements of the kind described in the resolution or to the city engineer, or to such board or officer or competent person employed by the city for such purpose as the council may name in said resolution and direct such board, commission or person to file with the clerk of the council a report in writing. The proposed improvement in the instant case was referred to the Board of Public Works, which was required to report in writing the plans and specifications of the proposed improvement, excepting in so far as said improvement included the acquisition of works or appliances already installed and any other property necessary or convenient for the operation thereof or the acquisition of the use of such works, appliances and property, as provided for in section 1, as to which works, appliances and property such report shall contain a general description. It also provided a report as to the estimate of the cost of said improvement and of incidental expenses; also a diagram showing the assessment district and the boundaries and dimensions of the respective subdivisions of land within said district; amount

paid out of the city treasury and the proposed assessment of the total amount of costs and expenses of the proposed improvement upon the several subdivisions of land in said district in proportion to the estimated benefits received by such subdivisions from said improvement and the manner and method of spreading the assessments.

Plaintiff appeared at the time fixed for hearing and filed a written protest based on the following grounds: That Act 5215, General Laws, pages 2679–2687, 1931 (Deering), did not include or authorize any proceeding for furnishing electric current for lighting service and ordinance No. 63060 derived no force or power therefrom, and therefore the assessment made thereunder is null and void; that the furnishing of electric current is not within the purposes or purview of said act; that the furnishing of electric current is not an improvement for which an assessment may be levied upon private property; that Sunset Boulevard is an important highway artery of said city of Los Angeles and the lighting of said boulevard is for the benefit of said city and its inhabitants generally and is not of greater benefit to the lands fronting thereon than it is to the traveling public generally; that the proportion of the cost to the city for said improvement is but thirteen per cent of the entire cost, as against eighty-seven per cent assessed against the land-owners; that the destruction of lighting posts is due to the negligence of automobile drivers, and lamps and globes are usually broken by mischievous or irresponsible persons and the cost of the repair or replacement of such property should not be assessed against the property; that the charges for supervising the furnishing of said electric current, or the making of repairs or renewals and the charges for collecting said assessments are illegal charges for the reason that there is no authority or warrant for assessing the property with any part of said costs and expenses; that said assessments were made on the basis of an arbitrary and uniform rate per front foot and they are not in proportion to the estimated benefits.

The foregoing constitute all the basic grounds upon which the assessments were protested.

When, upon a hearing, the said proposed assessments are confirmed, modified or corrected, or in case no protests are filed, said report of the Board of Public Works, with its

corrections or changes, if any, shall be adopted as a whole and the council shall, by resolution, order said proposed improvements to be made and declare its action upon said report and assessment, which resolution shall be final and conclusive on all persons, and the assessments shall be accordingly levied upon the subdivision of lands in the assessment district.

Said act especially provides that the act of March 21, 1905, providing for the lighting of public streets and the assessment of the costs and expenses thereof upon the property benefited thereby, is expressly repealed, and it further provides that the proceedings commenced under said 1905 act prior to the day of the repeal may be continued to completion in the same manner and with the same force and effect as if said 1905 act had not been repealed. The above provision tends to strengthen the view that the legislature itself construed the act of 1913 and intended that it should be a continuation of the act of 1905, but made such provisions as increasing growth and changes seemed to require, both acts pointing to the accomplishment of some of the same general purposes of legislation, to wit, public street lighting.

The fact that all improvements commenced under the 1905 act prior to the day of its repeal could be carried forward to completion under said repealed act is significant. The inference is irresistible that the act of 1913, with such changes as were deemed necessary, would afford municipalities every power which was conferred by the 1905 act. One or more other acts might be noted which clearly indicate that it was the policy and intention of successive legislatures to give to municipalities the power to provide for the operation or maintenance of lighting systems along public streets, alleys and other public places and the lighting thereof by electric current, gas, etc., and assess the costs thereof on the property benefited. Appellant points out that Act 5216, approved May 16, 1919, 2 Deering's General Laws (1931), page 2687, contains a title which would meet the objection of appellant as to the sufficiency of title, but which for some reason unknown to appellant the city council did not institute its proceedings under. It will be noted, however, that the 1919 act, approved six years after the 1913 act, recognizes said 1913 act (attacked

here on the ground of insufficiency of title) and makes direct and full reference to it by quoting its title, and says, "this act [1919] shall in no wise affect" it, "but it is intended to and does provide an alternate system of proceedings for making the improvements provided for by this act; and it shall be within the discretion of the city council of any municipality to proceed in making such improvements either under the provisions of this act or under the provisions of such other acts; . . . " Said act provides that when any proceedings are commenced under the 1919 act the procedure prescribed shall be followed throughout and any departure therefrom will render the proceedings null and void. By the foregoing we have the language of the legislature to the effect that the system provided by the later act, 1919, for making the improvements provided in both acts is an *alternate* system and either act may be adopted as a means of accomplishing the same result.

We now pass to the sufficiency of the title of the 1913 street lighting act, which is the source of all power exercised under ordinance No. 63060. Appellant admits that the constitutional requirement as to the titles of acts is to be liberally construed but insists that the furnishing of electric current and the assessment of the costs and expenses thereof is a subject embraced in the body of the act but not in its title. It is true that the exact language which appellant claims is necessary to a valid title does not appear in that part of the title which grants the power to the city to inaugurate the lighting system under which it has been operating. But it is also true that the portion of the title which repeals the act of March 21, 1905, is set forth in the precise language which appellant insists should be stated in order to conform with the constitutional mandate, and thereby confer the power which the city claims the right to exercise. Admittedly the repealing portion of the title fully expresses the subject embraced in the act. In *Ex parte Liddell*, 93 Cal. 633 [29 Pac. (2d) 251], a leading case of this state construing the requirement of article IV, section 24, state Constitution, as to titles of legislative acts, the rule is thus stated: "If the title contains a reasonable intimation of the matters under legislative consideration, the public cannot complain. It has always been the custom to state the subject of a bill in general terms and with the

fewest words, and the framers of the Constitution doubtless intended the legislature to conform to that custom. . . . When the general purpose of the act is declared, the details provided for the accomplishment of that purpose will be regarded as necessary incidents . . . and it is held in many cases that an act to incorporate a certain town may lawfully provide all means necessary for the government of the town, including taxation, courts, definition of misdemeanors, punishment of offenders, municipal improvements, etc.'' (Citing authorities.) ▆ The constitutional provision must be given a liberal construction, because it does not itself ''define the degree of particularity with which a title shall specify the subject of a bill. The matter must therefore be left largely to legislative discretion'' (citing cases). ▆ The title of the act in the instant case conferring power on municipalities clearly expresses as one of its subjects and purposes the maintenance by municipalities of electric power works, lighting works, and for the assessment of the costs and expenses thereof upon the property benefited. The closing clauses of said title specifically provide for the repeal of a former act which granted power to municipalities similar to that granted under the later act of 1913. When the title is read as a whole, can it be said that there is no intimation in the title as to the subject expressed in the body of the act? We think not. The only logical inference that can flow from the language of the title is that the production and furnishing of electric current was one of the main objects and purposes conferred on cities by the legislature. The construction of an electric power works with no purpose or means of furnishing light would be as void of rationality as would the building of a reservoir storage system without providing any means of supplying it with water, or a locomotive without providing any means of generating steam. ▆ Reading the words ''acquisition'', ''installation'', ''construction'', ''extension'', ''repair'', and ''maintenance'', with the context of the title itself, it would seem that there can be no doubt that the title of the act contemplated the operation of lighting works and the furnishing of electric current by that means. If this is not so, there would be no occasion to repair anything and there would be nothing of a useful character to maintain. Those words, construed with respect to their context,

assume that the thing to be repaired or maintained is in operation. We are of the view that the legislature, by the act of 1919, wherein it is specially provided that the act of 1919 shall in nowise affect said act of 1913, gave an expression of legislative intent which is entitled to more than passing consideration. In the case of *In re City of Boston,* 221 Mass. 468 [109 N. E. 389], it was contended that the city had no power to operate the draws in certain bridges. The statute conferred upon the city the power of "maintenance". The term was held to be broad enough to include the operation of the draws. There is no substantial difference between "maintenance" and "maintaining and operating". (*Saltonstall* v. *New York Central R. Co.,* 237 Mass. 391 [130 N. E. 185].)

Where a statute authorized the establishment and maintenance of a detention home, the word "maintain" includes all things having to do with carrying on the business for which the home was built or established. (*People* v. *Atchison, T. & S. F. R. R. Co.,* 300 Ill. 415 [133 N. E. 250].) Maintaining an elevator includes the operation and not simply furnishing the elevator. (*Globe Ins. Co.* v. *Wayne,* 75 Ohio St. 451 [80 N. E. 13].)

It was said in *Park* v. *Pacific Fire Extinguisher Co.,* 37 Cal. App. 112 [173 Pac. 615], that the proposition is so well·settled as to need no citations that the Constitution does not require that the title of an act shall embrace an abstract or catalog of its contents; and when the title of an act is not misleading, the act will not be held void simply because of the fact that its title does not so catalog or schedule every item contained therein. For further authority see *Ex parte Bear,* 216 Cal. 536 [15 Pac. (2d) 489, 83 A. L. R. 1402]; *Ex parte Marriott,* 218 Cal. 179 [22 Pac. (2d) 692]; *People* v. *Jordan,* 172 Cal. 391 [156 Pac. 451].

It cannot be said that either the members of the legislature who passed said act of 1913 or the public were or have been deceived by its title.

The questions raised by appellant in this appeal are set forth in his closing brief as follows:

"We make no point that the City Council did not observe in form all the detailed steps prescribed in the procedure for proceeding under the act under discussion, from ordinance of intention, notices, and all that, down to the pur-

ported confirmation of the assessment. But, since the question here is one of power—where, we contend, the council *has no power* to do the work proposed, we think that this case is not foreclosed by the summary statement that the council went through all the technical forms laid down by the law. We think we have shown that this case comes under that category and, hence, the plaintiff here is not within the rules referred to in respondent's brief. [Objections to the method of assessment.] . . . We contend that the assessment is invalid because the council had no power to assess appellant's property for the cost of electric current, nor to include in the assessment the items of collection fees and the costs of repairs and renewals.''

█ That was the theory, as stated by appellant, upon which the case was tried in the superior court, and was presented by appellant in the District Court of Appeal, Third District. An *amicus curiae* brief was filed in the District Court of Appeal which raised questions not presented in the lower court and which were raised for the first time on appeal by the brief of *amicus curiae*. Many of said questions were specifically eliminated from the cause by the appellant's statement of his case, and they cannot be considered on appeal under the well-established general rule. Supporting authorities of the above rule are collated in 2 California Jurisprudence, section 67, pages 234, 235. See, also, collection of cases, 2 New California Digest, section 115, page 148. As said in *Farmers' Union Ditch Co.* v. *Rio Grande Canal Co.*, 37 Colo. 512 [86 Pac. 1042], ''The court will not determine or pass on other questions which might have been raised and which are suggested by the *amici curiae*.'' See, also, *State* v. *City of Albuquerque*, 31 N. M. 576 [249 Pac. 242].

█ Appellant invokes the rule that the proceedings herein are *in invitum* and the authority conferred by statute must be strictly pursued. While this is so, it is not to be taken that the same rules which apply to inferences, presumptions, rules of evidence and construction of statutes should be differently applied to proceedings which involve a question of taxation. All that the law requires in any matter is a construction agreeable with reason and which gives force and effect to the intentions of the statutes or ordinances as written.

 The lighting posts, installation of lamps, pipes or conduits for wires and other appliances for lighting had been installed by the municipality before this proceeding was brought. All this, appellant concedes, was clearly within the terms of the act and was an improvement of a permanent character. But the appellant contends that with the above work or improvements the city's power ended. The operation of the lighting works, it is claimed, is not within the purview of the act. Electric current, it is insisted, is an evanescent substance or fluid, has no permanency, is not an appliance or a part of any work, or an improvement. As we understand the contentions of appellant, said city has the right to erect poles, equip them with lamps, string wires, install pipes and conduits and construct electric power works, and do all things necessary to generate electric current in the exercise of its municipal power, but it cannot make the costs and expenses of supplying electric current a charge on the lands situate within the district according to the benefits received by reason of said improvements. We think there is no doubt that the furnishing of electric current comes within the classification of public improvements, in the same sense as does a permanent building or anything else of a permanent nature used in public utility construction. As a matter of fact, street lighting is a public improvement both by statute and decisions. The electric current is the main source of benefit to be derived from the improvement; it is the solar luminary, as it were, of a street lighting system, all other things being subsidiary to it. This question is elaborately discussed in *Ankeny* v. *City of Spokane,* 92 Wàsh. 549 [159 Pac. 806, L. R. A. 1917A, 1093], and it was there said: "No rule of law would justify their erection and maintenance in a street [lamp posts, etc.], were they not the necessary means to a desired end. It is difficult to understand, therefore, why the cost of this mechanical part of the improvement can be charged to abutting property specially benefited by the lighting of the street while the cost of the electric energy, without which there can be no completed improvement, cannot be so charged. We think there is no room for such a distinction, that the mechanical contrivances and the electrical energy are but parts of a complete whole, and that it is the whole, and not one of the parts, that

confers the benefits . . . '' We are in accord with the reasoning of the Washington Supreme Court, which seems conclusive against the contention that electric current does not constitute any part of a public street lighting system or improvement and private property cannot be assessed for the costs of furnishing or supplying the same.

The decision last above cited also disposes of another question raised by appellant herein to the effect that the particular residence section of Sunset Boulevard, between North Broadway and Sanborn Avenue, being a heavily traveled thoroughfare it is the general municipal duty to maintain said improvement rather than the duty of any particular locality. The decision observes that there are many public improvements from which private property receives an incidental advantage, but which are held to justify only general taxation. The rule, the decision continues, has been especially applied to public thoroughfares which, having been improved at the expense of local property and which have by use become out of repair, it is held that the local property could not be charged with the cost of keeping the street in repair. The improvement of a street usually increases travel thereon by the general public and consequently creates an increase of wear over normal conditions. "It is not just," continues the decision, "that the abutting property owners should be charged with the expense caused by this increase of travel, and the courts generally hold that the burden cannot be placed on them. But the situation with reference to an electric lighting system is in no way analogous. The system may have a local situs, benefiting only that part of the city in which it is situated. It is of such a nature that increased use of the street by the public does not impair its efficiency or add to the cost of its maintenance and operation. When, therefore, the system does not extend over the city at large, but is confined to a part of the city only, it is manifest that it may be almost wholly of local benefit, rendering it unjust to the general taxpayers of the city to be charged with the entire cost of its maintenance and operation."

The city council and other bodies charged with the duty of determining the question of benefits conferred upon the property within the local district by reason of the im-

provement considered and determined that issue, and there being no evidence that they exceeded or abused their authority, the finding of said bodies is conclusive of the subject. Fraud or bad faith are not alleged in the complaint, nor was any attempt made to prove either.

■ Objection is made to the assessment levied on the lands for the reason that the Board of Public Works in its report to the council included certain items as "incidental expenses"; also that certain costs and expenses were estimates and did not purport to represent the exact cost of said items or the exact cost of the services to be performed; further, that the act does not define "incidental expenses", and the matter being thus left to the unlimited discretion of the officers whose duty it was to prepare said estimates renders the entire assessment void. It is further claimed that there should be a segregation and itemization of appliances and incidental expenses.

It is the general rule that when the terms of a statute are complied with nothing further need be done. The estimated net cost to the property owners for furnishing electric current and maintaining said lighting system for said period of fourteen months, as admitted by the parties and found by the court, is, in words and figures, as follows:

| | |
|---|---:|
| Estimated cost of current | $18,652.00 |
| Estimated cost of city clerk's fees | 10.00 |
| Estimated cost of repairs and renewals | 1,607.18 |
| Engineering fees | 213.00 |
| Collection fees | 309.00 |
| Supervision fees | 426.00 |
| | $21,217.18 |
| Less city portion of costs | 2,885.00 |
| Net cost to property owners | $18,332.18 |

We think there is no merit in the contentions that the assessment is invalid for the reason that it does not define the phrase "incidental expenses", or because the many component parts which enter into and form the designated items as a whole are not separately analyzed in the report to the council and a cost price placed opposite each article. The cost of repair work to poles, posts, wiring, conduits, lamps and other necessary work and appliances, and the

maintenance and replacements that would naturally be required, could only be arrived at by estimates based on the technical knowledge and experience of persons engaged in such work. There is scarcely a public improvement of any kind but that the cost of its construction and appliances is based upon estimates made by persons skilled in the particular lines of work or construction to be accomplished. The cost could not otherwise be determined. Besides, subdivision 2, section 2 of the act in question makes it the duty of the Board of Public Works to file with the council "An *estimate* of the cost of said improvement and of the *incidental expenses* in connection therewith", and section 16 provides that if the assessment shall realize a larger sum than is necessary therefor the excess shall be refunded *pro rata* to the parties by whom it was paid. The above method of estimating cost is not only approved by the act itself but it is also in harmony with the common method of arriving at the matter of costs in both public and private building enterprises.

▪▪▪ Appellant made no protest as to the failure to segregate the items in question; or because estimates of costs were made as to any part or all of the work; or complaint that "appliances" were not defined, or to the form of any of said items. Neither are any of these matters included in the "statement of questions involved on appeal". Had they been included in his protest, they could have been corrected to conform to his objections, if well taken, as far as it was possible to do so. Having failed to raise such objections, he cannot raise them now.

▪▪▪ Objections are made to the inclusion of estimates of the costs of repairs and renewals and charges for the collection of the assessments and supervision of the works. We see no reason why the district should not be required to bear the costs and expenses of its operation. Whether the service of, collecting the assessments or supervision of the system is paid to employees of the city or to others is of no concern to appellant. If said services are reasonably necessary and are rendered for the benefit of the district, the question as to whether the city or the employees who actually perform the work are entitled to the compensation cannot affect the duty of the district to pay for services performed. It could not impose additional expenses upon

the city without compensating it for value received. Supervision of a system implies that compensation will be paid for services so rendered. Surely both are included in the term "incidental expenses". Collection of assessments and supervision of the system are both duties resting with the district and are charges incidental to its existence. The cost of repairs and renewals are specifically provided for in the act.

Objection is made that no definition is given as to the word appliances used in conjunction with "works", etc. It would probably be impossible to define in advance every article that would be required to be used in the work. Appliances are things applied to or used as a means to an end. (Webster's New International Dictionary.) The word is relative to the subject described in the ordinance and there is no confusion as to the things it obviously applies to.

The assessment in respect to benefits was spread upon the property of the district in proportion to the frontage feet owned by the respective owners. We cannot say that such a method is not proper in the circumstances of the case.

We have examined the procedure as provided by the Street Improvement Act and there appears to have been a substantial compliance with its provisions. The resolution of intention is full beyond the requirements of the act. No departure or failure to comply with the law appears in the record. Appellant was not misled to his prejudice in any respect. He appeared before the Board of Public Works and presented in writing his protests. We have examined each one of them, as well as the record before us, and we find no grounds which would support an order of reversal.

Judgment affirmed.

Thompson, J., Waste, C. J., and Shenk, J., concurred.