[No. B109234. Second Dist., Div. Seven. Aug. 21, 1998.]

WILLIAM G. ISAAC et al., Plaintiffs and Respondents, v.
CITY OF LOS ANGELES et al., Defendants and Appellants.

## COUNSEL

James K. Hahn, City Attorney, Thomas C. Hokinson, Chief Assistant City Attorney, Renee J. Laurents, Deputy City Attorney, William A. Kerr, Pircher, Nichols & Meeks, Michael D. Berk, Arter & Hadden and Aaron M. Peck for Defendants and Appellants.

Engstrom, Lipscomb & Lack, Walter J. Lack, Cynthia J. Emry and Leanne J. Fisher for Plaintiffs and Respondents.

## OPINION

**JOHNSON, Acting P. J.**—The City of Los Angeles (City) appeals from a judgment entered in favor of plaintiffs William G. Isaac et al., on their complaints seeking a refund of special assessments levied by the City against plaintiffs' master-metered real properties on account of delinquent utility bills. The trial court held the ordinance empowering the City to make the assessments and record a super-priority lien on plaintiffs' real properties violated the California and federal Constitutions and state statutes governing the priority of liens. On appeal, the City contends the trial court improperly granted summary judgment because the ordinance is constitutional and material issues of fact exist.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In May 1987, the City Council of the City of Los Angeles adopted an ordinance providing for the imposition of special assessment liens on master-metered apartment buildings for the collection of past due and estimated future billings for water and electric power.[1] (L.A. City Admin. Code, § 6.500 et seq., eff. July 23, 1987.)[2] The Ordinance permits the City to levy the assessments and record a lien securing such assessment against the subject real property. The Ordinance also provides such liens have priority

---

[1] The water and electricity vendor in the City of Los Angeles is a municipally run entity, the Los Angeles Department of Water and Power (DWP).

[2] Los Angeles City Administrative Code section 6.500 et seq. shall be referred to herein as the Ordinance and references to it shall be denominated "Ordinance, Section __." A copy of the full text of the current Ordinance is attached as appendix A.

over previously recorded deeds of trust and other liens and encumbrances against the property. Essentially, the purpose of the Ordinance is to provide a mechanism for collecting unpaid utility bills on master-metered apartment buildings.

The Ordinance states it is based upon the city council's finding the provision of essential public utilities (water and electricity) to residential real properties is essential to the health and welfare of the residents of such properties. The city council further found the failure to provide such essential utilities jeopardizes the health and welfare of the residents and renders the premises not only uninhabitable as a matter of law (Civ. Code, § 1941) but creates a public nuisance (L.A. Mun. Code, § 91.8902). The city council further found the tenants of master-metered apartment buildings pay rent with the expectation the property owner would pay for essential utilities. The Ordinance also declares the provision of essential public utilities constituted a "special benefit" to master-metered real properties and the owners thereof. (Ord., § 6.500.)

The Ordinance provides a lien may be assessed for an unpaid utility service charge that is more than 75 days past due. The Ordinance sets forth the procedure by which a lien is assessed: An application for assessment is filed with the city clerk and forwarded to the city engineer, who advises the city council an application had been made. The city engineer prepares an assessment roll listing. (Ord., § 6.503.) A hearing on assessment applications is conducted before an officer or panel of officers selected by the Board of Public Works, and notice of any hearing is given by mail and publication no later than 15 days before the hearing to the property owner, each person last billed for utility services (if different from the owner), and each lender of record.[3] (Ord., §§ 6.504, 6.505.)

Upon confirmation of the assessment, the city engineer records a lien with the county recorder "in such forms as to give suitable notice of the assessment lien to any potential buyer." (Ord., § 6.507.) The City entered into an agreement with the County of Los Angeles (County) for the collection of this assessment by the recordation of this assessment lien against the subject real properties, which is then collected with the property taxes. The assessment lien thus becomes a lien for real property taxes, and upon collection by the County was turned over to the city engineer for the City. The assessment accrues interest and penalties "to the same extent and on the same conditions as ad valorem taxes bear interest and carry penalties." (Ord., §§ 6.508-6.510.) Finally, the assessment lien is given priority over all other encumbrances and liens on the subject property except for liens of special assessments separately billed, and as to such assessments it enjoys equal parity.

---

[3]At the time the liens were levied against respondents herein, the Ordinance did not provide for written notice to lenders of record. Paragraph 6.504 of the Ordinance was later amended to provide for such notice.

The utility lien thus acquires the same priority as a lien for property taxes, and has priority over even previously recorded deeds of trust on the property. (Ord., § 6.513.)

Pursuant to the Ordinance, the City began to assess the owners of master-metered residential real property in the City the cost of providing essential public utility services when the owners of such properties were either unwilling or unable to pay for such utilities. Some of the liens were for past due or overdue utility charges and sewer costs; some of the liens were for future water and electricity billings.

The plaintiffs in this action were all the owners or lenders of record of master-metered property upon which the City caused an assessment lien to be recorded.[4] Due to the recordation of the liens, title to the subject properties was clouded. The plaintiffs were required upon a transfer of the property to pay off the liens in order to remove the cloud on title the liens created. The effect of the Ordinance in some cases was to place the burden of paying the utility charges on nonowners of the property or persons who were not responsible for incurring the indebtedness. Pursuant to the terms of the Ordinance, holders of deeds of trust, such as plaintiff Great Western Bank, were not given notice of the assessment or recordation of the lien.[5]

After the plaintiffs were forced to pay off these liens in order to clear up title to their property, they filed claims with the City, which were denied. The plaintiffs then commenced seven separate lawsuits against the City and County[6] seeking a refund of the payments made and a declaration the ordinance was invalid on state and federal constitutional grounds and on the grounds it impermissibly created a "super-priority" lien. These actions were consolidated and the plaintiffs filed separate motions for summary judgment, arguing the Ordinance violated their due process and equal protection rights under the California and United States Constitutions and the Ordinance

---

[4]Due to the similarity of the factual scenarios involving each of the seven plaintiffs and the numerous properties involved (some plaintiffs own more than one affected parcel), we will not set forth in detail the allegations of each plaintiff relating to their specific properties. However, the utility charges levied against the properties were substantial sums: For example, on one of the properties on which Great Western had a mortgage, the charges (present and future) totaled in excess of $152,000.

[5]Although the ordinance provides lienholders of record would be given notice of the application for assessment and of the hearing, apparently Great Western and other lenders did not receive any notice. (Ord., §§ 6.503, 6.504.) Furthermore, the ordinance does not provide for notice of the recordation of the lien to be given. (Ord. § 6.507 [city engineer records notice of assessment lien with county recorder].)

[6]Pursuant to stipulation, the parties agreed the County, insofar as the only relief sought against it was the refund of moneys held by it, need not participate in the litigation by filing pleadings and other papers. The County has not filed a brief on appeal.

violated California statutory law governing lien priority. The City filed a cross-motion for summary judgment, arguing the statute was valid.

The trial court ruled in favor of the plaintiffs, holding (1) the Ordinance, as applied, violated the plaintiffs' due process and equal protection rights because the Ordinance failed to achieve a reasonable degree of equality between the plaintiffs and other similarly situated persons; (2) the Ordinance violated Revenue and Taxation Code section 2192.1 because it conferred "super-priority" status to the assessment lien over prior recorded deeds of trust; (3) the Ordinance violated the California Constitution because the special assessments constituted a "special property tax" prohibited by article XIII, section 1 and article XIII A, sections 1, 2, subdivision (a); (4) the Ordinance violated procedural due process because no prior actual notice was given to the plaintiffs of the imposition of the assessments, and (5) the City wrongfully included in the assessment charges not authorized by the ordinance, such as sewer charges.[7] Appellant timely appeals.

## Discussion

At issue in this appeal is whether the trial court improperly granted summary judgment finding the Ordinance invalid on the grounds it (1) violated due process and equal protection under both the California and federal constitutions (Cal. Const., art. I, § 19; U.S. Const., Amend. XIV), (2) violated California statutory law establishing the priority of liens (see, e.g., Rev. & Tax. Code, § 2192.1), and (3) violated the California Constitution's prohibition against special taxes (Cal. Const., art. XIII A, §§ 1, 2, subd. (a).) The City also contends factual issues exist with respect to the issue of whether proper notice of the assessment liens was given.

We hold the Ordinance is invalid on the grounds it is preempted by the statewide statutory scheme governing the priority of liens upon real property. Because we find the statute invalid on these grounds, we do not address respondents' arguments the Ordinance violates due process or equal protection, or appellant's argument that factual issues exist precluding summary judgment.

## I. Standard of Review.

A trial court's grant of summary judgment is reviewed de novo for error; we review the trial court's ruling, not its rationale, and will uphold the judgment if it is correct on any theory. (See Code Civ. Proc., § 437c,

---

[7]The trial court actually enumerated six grounds, but we do not see how the sixth specified ground materially differs from the first so have not included it here.

subd. (g); *Sachs* v. *FSR Brokerage, Inc.* (1992) 7 Cal.App.4th 950, 960-961 [9 Cal.Rptr.2d 306].) Thus, in spite of our affirmance, we rely on a different rationale than the trial court in finding the ordinance unconstitutional. (*California Aviation, Inc.* v. *Leeds* (1991) 233 Cal.App.3d 724, 730-731 [284 Cal.Rptr. 687].) In addition, although we conduct an independent review, we use the same standard for summary judgment as the trial court. (*Szadolci* v. *Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19 [17 Cal.Rptr.2d 356].)

II. *The Lien Imposed by the Ordinance Is Neither a Special Tax Nor a Special Assessment and Therefore Does Not Implicate the Concerns of Article XIII A of the California Constitution.*

 The City contends the lien imposed by the Ordinance is a valid "special assessment" exempt from the limitation on special taxes. Respondents argue the lien constitutes a "special tax" prohibited by article XIII A of the California Constitution because the lien seeks to defray expenses other than those actually incurred in serving utilities to the master-metered apartment buildings.[8] We conclude, however, the lien is neither a special assessment nor a special tax and thus article XIII A does not govern. Nevertheless, because we conclude the utility lien secures a purely contractual obligation for commodities provided by the DWP acting as a vendor on behalf of the City, the City's actions in imposing a lien are ultra vires and void.

A. *The Lien Is Neither a Special Assessment Nor a Special Tax.*

A lien is defined as "a charge imposed in some mode other than by a transfer in trust upon specific property which it is made security for the performance of an act." (Civ. Code, § 2872.) Liens are created by operation of law or by contract; liens securing taxes and special assessments are created by operation of law. (Civ. Code, § 2881; Rev. & Tax. Code, §§ 2187, 2192.) Here, the City seeks to secure by a lien the performance of respondents' obligations to pay for utilities, a commodity.

 Governmental levies against real property generally fall into three categories: (1) taxes, (2) special assessments, and (3) developmental and regulatory fees or "user charges." Each class of charge has particular characteristics, limitations, and purposes. Special assessments are made for the purpose of completing a specific public improvement in a designated district; they are compulsory charges and are placed upon specific real property. They are made under express legislative authority for the purpose of defraying the cost of the proposed local public improvement. (*San Marcos Water*

---

[8]Respondent Great Western Bank filed the "lead" brief on appeal. The other respondents filed their own briefs and also joined in Great Western's arguments.

*Dist.* v. *San Marcos Unified School Dist.* (1986) 42 Cal.3d 154, 161 [228 Cal.Rptr. 47, 720 P.2d 935].) Because the local improvement will benefit only certain properties, the general public is not required to subsidize it through a general tax levy. (*Solvang Mun. Improvement Dist.* v. *Board of Supervisors* (1980) 112 Cal.App.3d 545, 552-554 [169 Cal.Rptr. 391].) Thus, strictly speaking, a special assessment is not really a tax but a benefit to specific property that is financed through the public credit. (*Spring Street Co.* v. *City of Los Angeles* (1915) 170 Cal. 24, 29 [148 P. 217].)

In contrast, although special taxes are also taxes levied for a specific purpose, they need not be earmarked to benefit particular property. (*Knox* v. *City of Orland* (1992) 4 Cal.4th 132, 142 [14 Cal.Rptr.2d 159, 841 P.2d 144].) Special taxes are prohibited by article XIII A, section 4 of the California Constitution unless approved by a two-thirds vote of the qualified electors of the entity (city, county, or special district) seeking to impose the tax.[9] (Cal. Const., art. XIII A, § 4.) Special assessments are exempt from limitations on special taxes because Proposition 13 was aimed at general government tax levies and overspending. (*Solvang Mun. Improvement Dist.* v. *Board of Supervisors, supra,* 112 Cal.App.3d at p. 556.) The amount of a special assessment may not exceed the benefit accruing to the affected property. Thus, if the property assessed receives no special benefit, the levy is a prohibited special tax. (*City of Los Angeles* v. *Offner* (1961) 55 Cal.2d 103, 109 [10 Cal.Rptr. 470, 358 P.2d 926].)

In addition to special assessments, property may be charged with different types of fees. These include: (a) regulatory fees imposed under the government's police power, (b) developmental fees exacted in return for permits or other governmental privileges, and (c) user fees. Development fees are usually imposed in connection with the development of real property and are not considered special taxes if the fee bears a reasonable relation to the development's probable cost to the community and the benefits derived from the community by the development.[10] (*Sinclair Paint Co.* v. *State Bd. of Equalization* (1997) 15 Cal.4th 866, 874-875 [64 Cal.Rptr.2d 447, 937 P.2d 1350].) Similarly, regulatory fees must not exceed the reasonable cost of the services necessary for the activity for which the fee is charged and for carrying out the purpose of the regulation; they may not be levied for unrelated purposes. (*Id.* at p. 876.)

---

[9]Article XIII A, section 4 provides: "Cities, counties, and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes on such district, except ad valorem taxes on real property or a transaction tax or sales tax on the sale of real property within such City, County, or special district."

[10]Development fees are sometimes called "user fees." (See *Carlsbad Mun. Water Dist.* v. *QLC Corp.* (1992) 2 Cal.App.4th 479, 481 [3 Cal.Rptr.2d 318].)

Finally, user fees are those which are charged only to the person actually using the service; the amount of the charge is generally related to the actual goods or services provided. A user fee for an ongoing service is a monthly charge rather than a one-time payment. User fees are thus distinguishable from special assessments as well as special taxes. (*San Marcos Water Dist.* v. *San Marcos Unified School Dist., supra,* 42 Cal.3d 154, 162.) However, if payments are exacted solely for the purpose of carrying on business with no further conditions, they are taxes. (*Sinclair Paint Co.* v. *State Bd. of Equalization, supra,* 15 Cal.4th at p. 877.) Thus, fees can become special taxes subject to the two-thirds vote requirement of Proposition 13 only if the two conditions set out in Government Code section 50076 exist: (1) the fee exceeds the reasonable cost of providing the service or the regulatory activity, or (2) the fee is levied for general revenue purposes.[11] (*Carlsbad Mun. Water Dist.* v. *QLC Corp., supra,* 2 Cal.App.4th at p. 485.) Similarly, special assessments may in reality be special taxes if the property assessed receives no special benefit beyond that received by the general public. (*Knox* v. *City of Oakland, supra,* 4 Cal.4th at pp. 142-143.)

■ The utility lien created by the Ordinance is neither a special assessment nor a special tax, nor is it a regulatory or development fee. At most it is a user fee: payment for a specific commodity purchased. The lien is not a special assessment because no special benefit is conferred upon the master-metered properties through a physical improvement to the real property. Utility lines to provide service to real property would be an improvement to the property; however, the utilities themselves are a commodity that are provided to customers and they are ephemeral by nature, resulting in no permanent improvement to the property. There is no evidence in the record that any of the funds collected from the utility customers are directly used for capital improvements. Thus, although utility service may be beneficial to the properties by maintaining their habitability, the provision of utilities is not a special benefit beyond that received by the general public meriting a special assessment.

Indeed, the utility customer's agreement to pay a certain rate for a certain usage of utilities is a contractual obligation, and is far removed from the revenue-raising devices of assessments and taxes. Similarly, the charges levied for utility consumption at the master-metered apartments do not amount to special taxes because there is no evidence in the record that the funds collected are earmarked for a special purpose. The utility charges do

---

[11]Government Code section 50076 provides: "As used in this article, 'special tax' shall not include any fee which does not exceed the reasonable cost of providing the service or regulatory activity for which the fee is charged and which is not levied for general revenue purposes."

not represent fees imposed for a regulatory or developmental purpose. There is no evidence the charges imposed exceeded the customer's actual or expected use of the utility commodity. Rather, at most the lien is based upon user fees, and represents a security interest in the real properties to secure payment for the obligation incurred to pay the DWP for utility charges. Thus, the utility lien does not implicate the special tax limitations of California Constitution, article XIII A. We therefore find the City's reliance on *Roberts* v. *City of Los Angeles* (1936) 7 Cal.2d 477, 490 [61 P.2d 323] misplaced. The City contends *Roberts* holds electric utility service constitutes a permanent improvement to the property and supports the imposition of a special assessment. (*Ibid.*) However, a careful reading of *Roberts* discloses it holds the costs and expenses of *supplying* electric utility service would support a special assessment; *Roberts* does not authorize a special assessment lien for the cost of the commodity itself. (*Id.* at pp. 490-491.) Indeed, as discussed *post*, the City's expansive reading of *Roberts* would not only give a municipality a means of circumventing the established procedures for obtaining judgments on contract actions, it would disrupt the statewide scheme of lien priority.

### B. The City Is Not Entitled to Impose a Lien on Respondents' Properties for Unpaid Utility Charges.

Because the utility lien is neither a valid special assessment nor a special tax giving the City authority to impose a lien to secure payment of the lien on that basis, the City cannot impose the utility lien unless there are other legal grounds supporting its imposition. ■ Under the Civil Code, liens are created in two ways: (1) by operation of law, and (2) by contract. (Civ. Code, § 2881.) Liens arise by operation of law where there is a statute providing for the creation of a lien in a certain situation, as for example tax liens.[12] An equitable lien may be imposed upon real property where the parties intend the property operate as security for the obligation. (*Jones* v. *Sacramento Sav. & Loan Assn.* (1967) 248 Cal.App.2d 522, 531 [56 Cal.Rptr. 741]; *California Bank* v. *Leahy* (1933) 129 Cal.App. 243, 247 [18 P.2d 709] [equitable lien requires a res upon which the obligation can attach itself].) A lien to enforce a simple contractual obligation, however, cannot be created unless the party has reduced the obligation to a judgment and an abstract of judgment is filed in the county recorder's office. (See generally, Code Civ. Proc., § 697.310 et seq.) ■ As there is no evidence in the record the parties agreed to the imposition of the utility lien in the event of unpaid utility charges, the City can only obtain a lien after it has obtained a judgment on an action to collect the unpaid utility charges. The ordinance,

---

[12]A lien for real property taxes arises and attaches every January 1. (Rev. & Tax. Code, §§ 2187, 2192.) The lien is discharged upon payment of the taxes due. (Rev. & Tax. Code, § 2194.)

however, attempts to circumvent the statutory provisions providing for the creation of judgment liens by ipso facto declaring the City already has a lien. The Ordinance is therefore invalid.

III. *The Ordinance Violates California Statutory Law and Is Not Exempt Under the Municipal Affairs Doctrine.*

The City argues because utility service is a municipal affair, it is within the City's exclusive power to legislate with respect to payment of utility charges and the Ordinance is well within the police power of the City. Respondents argue the Ordinance, by giving the utility lien super-priority over all other recorded liens, is invalid because it violates California statutory law relating to the priority of liens.[13] We agree the Ordinance is invalid because it disrupts California's statewide statutory scheme of lien priority and is therefore not a valid exercise of municipal authority under California Constitution, article XI, section 5, subdivision (a).

Every California city may enact and enforce within its limits local ordinances not in conflict with general laws. (Cal. Const., art. XI, § 7.) Chartered cities, such as Los Angeles, are granted exclusive power to legislate their municipal affairs. (Cal. Const., art. XI, § 5; Gov. Code, § 34101.) Under home rule, the state Legislature's authority to intrude into matters of local concern is curtailed. The benefits of home rule are numerous, because cities are familiar with their own local problems and can often act more promptly to address problems than the state Legislature. Therefore, cities are only precluded from enacting laws on nonlocal matters if it is the intent of the Legislature to occupy the field to the exclusion of municipal regulation. (*See Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 61-62 [81 Cal.Rptr. 465, 460 P.2d 137].)

Whether a city ordinance is valid therefore requires a determination of whether (1) the local regulation or ordinance is a "municipal affair," upon which the municipality has the exclusive authority to regulate, or (2) whether the subject is a matter of statewide concern such that state legislation preempts any municipal attempt at lawmaking. Because the California Constitution does not define "municipal affairs," it has become a question to be decided on the facts of each case, as the concept of a municipal affair changes over time as local issues become issues of statewide concern. (*Bishop* v. *City of San Jose, supra,* 1 Cal.3d at p. 62; *Century Plaza Hotel Co.* v. *City of Los Angeles* (1970) 7 Cal.App.3d 616, 620 [87 Cal.Rptr. 166].) Although the state Legislature may have attempted to deal with a particular

---

[13]The City's brief does not directly address this issue, although plaintiff Great Western Bank raised the issue in its motion for summary judgment.

field, this does not automatically ordain preemption. The Legislature may also express its intent to permit local legislation in the field, or the statutory scheme may recognize local regulations. (*City of Dublin* v. *County of Alameda* (1993) 14 Cal.App.4th 264, 276 [17 Cal.Rptr.2d 845].)

■ Whether a particular matter is of "statewide concern" is another way of stating that the matter is preempted and conflicting local legislation is prohibited. *Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644 [209 Cal.Rptr. 682, 693 P.2d 261] recognized a three-part test to infer a legislative intent to preempt conflicting municipal enactments only where (1) the subject matter has been so fully and completely covered by general law as to clearly indicate it has become exclusively a matter of state concern, (2) the subject matter has been partially covered by general law stated in such terms as to indicate clearly a matter of paramount state concern which will not tolerate further or additional local action, and (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance outweighs the possible benefit of the law to the municipality.[14] (*Fisher, supra,* at p. 708.)

■ We find lien priorities on real property a matter of statewide concern because statewide uniformity in lien priority is essential. ■ In determining whether a field is fully occupied (expressly or impliedly) by general law such that a municipality may not enact conflicting laws, we first must determine whether the "field" is sufficiently defined. A "field" of legislation is one which is sufficiently logically related so that a court or a local legislative body could ascertain a cohesive approach to the subject. (*Fisher* v. *City of Berkeley, supra,* 37 Cal.3d 644, 707-708.) ■ Lien priority is a sufficiently defined field for purposes of preemptive analysis as the subject has been extensively covered by legislation. Numerous kinds of liens may be imposed on real property—judgment, assessment, tax, and consensual—and each type of lien's priority in relation to other liens is well defined.

For example, under California's general rule of lien priority, all other things being equal, liens have priority according to the time of their creation. (Civ. Code, § 2897.) Other statutes, including recording statutes, modify this general rule. For example, liens for taxes are paramount to rights created by mortgages and deeds of trust, and liens for special assessments and general taxes stand on equal footing. (Rev. & Tax. Code, § 2192.1; *San Mateo*

[14]Strictly speaking, the test outlined in *Fisher* is a not the test applied to municipal affairs under California Constitution article XI, section 5, but *Fisher* expressly condoned its application to laws enacted by charter cities. (*Fisher* v. *City of Berkeley, supra,* 37 Cal.3d at p. 708.)

*County Bank* v. *Dupret* (1932) 124 Cal.App. 395, 396 [12 P.2d 669]; *City of Long Beach* v. *Aistrup* (1958) 164 Cal.App.2d 41, 48, 49 [330 P.2d 282].) The priority of tax liens is a creation of statute, as tax liens are not by their own force superior to private contract and mortgage liens. (*Home Owners' Loan Corp.* v. *Hansen* (1940) 38 Cal.App.2d 748, 752 [102 P.2d 417].) Purchase money mortgages are given special priority, having priority over all other liens subject only to the operation of the recording laws. (Civ. Code, § 2898, subd. (a).) Judgment liens are given less priority, such that even a prior recorded judgment lien is subordinate to a previously executed, but unrecorded, purchase money deed of trust. (*Walley* v. *P.M.C. Inv. Co.* (1968) 262 Cal.App.2d 218, 219-220 [68 Cal.Rptr. 711].) Consistent with this scheme, Government Code section 53933 accords special assessments liens "first in time priority" among themselves.

In addition, under Public Utilities Code sections 16469 and 16470, a private utility may obtain a lien for unpaid utility bills. This utility lien has the same priority as a judgment lien.[15] Although these sections are inapplicable to the City because municipally owned utilities are not regulated by the Public Utilities Commission on the theory the electoral process is a sufficient check on their functioning, sections 16469 and 16470 are instructive, as they demonstrate a legislative intent to accord utility liens a lesser priority than tax liens consistent with the California's statutory scheme. (*Los Angeles Met. Transit Authority* v. *Public Utilities Com.* (1959) 52 Cal.2d 655, 661 [343 P.2d 913]; *County of Inyo* v. *Public Utilities Com.* (1980) 26 Cal.3d 154, 158-159 [161 Cal.Rptr. 172, 604 P.2d 566].) However, we point out that the absence of any specific statewide legislation permitting municipal utilities to impose a lien does not create a statutory loophole inviting local legislation, because of the pervasive statutory scheme already in place governing lien priority.

Because lien priority is a matter of statewide concern, the City may not enact legislation that conflicts or disables the effectiveness of statutory law. The statutory scheme of lien priority giving priority to certain liens, such as tax liens and purchase money mortgages, reflects a legislative intent to favor certain types of charges against real property. The utility lien at issue disrupts this balance by giving what is essentially a judgment lien priority normally accorded only to tax liens. The potential ramifications of this anomalous lien include the reticence of lenders to underwrite master-metered

---

[15]Public Utilities Code section 16469 provides in relevant part that ". . . charges unpaid at the time specified for the fixing of the rate of taxes may be added to and become part of the annual assessment levied upon the land upon which the commodity or service was used if the property [was] owned, controlled, or in the possession of the same person who owned, controlled, or was in possession of it during the time the service charges were incurred. . . ." Section 16470 provides that "[c]harges added to an assessment are a lien on the land . . . ."

apartment buildings and increased information costs relating to properties in the County, as potential lenders or purchasers must undertake additional investigations to determine the existence of such liens.

We sympathize with the City's plight in not being able to effectively use the utility cutoff threat to collect delinquent bills because those using the utilities generally are not the ones failing to pay. The record contains no explanation why the owners of the master-metered apartment buildings routinely failed to pay their utility bills, necessitating the enactment of the Ordinance's drastic measures. However, the City will need to find another means by which to recoup payment from these delinquent property owners and at the same time ensure the tenants of the affected properties continue to receive necessary and beneficial utility services

## DISPOSITION

The judgment of the superior court is affirmed. The parties are to bear their own costs on appeal.

Woods, J., and Neal, J., concurred.

A petition for a rehearing was denied September 21, 1998, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied November 18, 1998.