[Civ. No. 3923. First Appellate District, Division One.—October 13, 1921.]

PATRICK KANE et al., Appellants, v. WILLIAM WEDELL, City Marshal, etc., et al., Respondents.

[1] MUNICIPAL CORPORATIONS—ACQUISITION OF MUNICIPAL WATER SYSTEM BY CITY OF SIXTH CLASS — PROCEDURE. — A city of the sixth class is not limited by the terms of the Municipal Incorporations Act from adopting the procedure prescribed by the Public Utilities Act of 1913 for the acquisition of a privately owned water system for the purpose of supplying its inhabitants with water.

[2] ID. — CREATION OF ASSESSMENT DISTRICT COTERMINOUS WITH CITY BOUNDARIES.—The board of trustees of a city of the sixth class, having the power under the Public Utilities Act of 1913 to acquire by either construction or purchase a municipal water system, has also the power to create an assessment district coterminous with the boundaries of the city if such proposed public improvement is to be for the benefit of all of its inhabitants.

APPEAL from a judgment of the Superior Court of San Mateo County. George H. Buck, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. P. Black and Black & Black for Appellants.

John F. Davis for Respondents.

RICHARDS, J.—This is an appeal from a judgment in favor of the defendants, who are the governing officials of the city of San Bruno, in an action brought by the plaintiffs as citizens, residents, and taxpayers of said city, to restrain said defendants as such officials from proceeding with the levy and collection of certain assessments upon the property of said plaintiffs and other property owners

---

1. Effect of limitation of municipal indebtedness upon the acquisition of a water supply, notes, 59 L. R. A. 604; 37 L. R. A. (N. S.) 1058.

Right of taxpayer in absence of statute to enjoin unlawful expenditure for waterworks, note, 36 L. R. A. (N. S.) 20.

Waterworks system as a public utility within constitutional or statutory provision relating to purchase, construction, or repair of public utility by municipal corporation, note, 9 A. L. R. 1034.

within said city for the purpose of procuring money with which to consummate the purchase and acquisition of ''the San Bruno water system'' from its owners and its operation thereafter as a municipal water system. The trial court refused to grant such injunction, and from its judgment to that effect this appeal has been taken.

The facts of the case are practically undisputed. The city of San Bruno is a municipal corporation of the sixth class organized and existing under the general Municipal Incorporations Act. For some years prior to the twenty-sixth day of May, 1920, there had been installed and in operation within said city a privately owned and so-called ''San Bruno water system,'' with proper mains and other facilities for supplying its inhabitants with water. On May 26, 1920, the board of trustees of the city of San Bruno, acting through a majority of their number, undertook to pass and adopt a resolution of intention to acquire said San Bruno water system for the purpose of its operation thereafter as a municipal water system for the purchase price of thirty-seven thousand five hundred dollars, and thereafter and on September 8, 1920, proceeded to establish an assessment district coterminous with the corporate limits of said municipality, and to levy an assessment upon the property of its taxpayers within said assessment district for the purpose of consummating the purchase of said water system. The foregoing proceedings were undertaken under and pursuant to the provisions of the so-called Public Utilities Act of the state legislature approved June 6, 1913 (Stats. 1913, p. 421), and subsequent acts of said board of trustees looking toward the collection of said assessment have been done under and in accordance with the provisions of said act. The plaintiffs and appellants upon this appeal assail the validity of these proceedings on the part of the officials of said city upon several grounds.

The appellants' first contention is that under the provisions of the Municipal Incorporations Act (Stats. 1883, p. 93) under which the city of San Bruno was organized and is operating as a city of the sixth class the trustees of said city have no power to create any indebtedness or liability in excess of the available money in the treasury to meet the same, or to levy or collect any property tax in excess of one dollar on each one hundred dollars of taxable

property, without the assent of two-thirds of the qualified electors of said city expressed in and at a special election. The particular sections of said Municipal Incorporations Act upon which the appellants rely in making this contention are the following: Section 862, subdivision 3, as amended by (Stats. 1901, p. 19), reading as follows: "3. To contract for supplying the city or town with water for municipal purposes, or to acquire, construct, repair, and manage pumps, aqueducts, reservoirs, or other works necessary or proper for supplying water for the use of such city and the inhabitants, or. for irrigating purposes therein."

Section 865, reading in part as follows: "The board of trustees shall not create, audit, allow or permit to accrue any debt or liability in excess of the available money in the treasury that may be legally apportioned and appropriated for such purposes . . . "

Subdivision 9 of section 862 of said act as amended in 1917 (Stats. 1917, p. 1529), reading as follows: "9. To levy and collect annually a property tax which shall not, without the assent of two-thirds of the qualified electors of such city or town, voting at an election to be held for that purpose, exceed one dollar on each hundred . . . "

[1] It is appellants' contention that the foregoing sections and subdivisions of the Municipal Incorporations Act furnish the only procedure by which the property of the citizens of the city of San Bruno can be assessed for the purpose of the acquisition of a municipal water system. In making this contention, however, counsel for the appellants concedes that for the purpose of making such local improvements as opening and paving streets, putting in sidewalks, sewers, and the like, the statute of 1913 does furnish a mode of procedure applicable to cities of the sixth class notwithstanding the inhibitions of the act under which they were created with relation to the limits and conditions of general property taxation. The distinction was in fact early recognized in this state between general property taxes for the current expenses and ordinary outlays of municipalities, and special assessments for particular forms of civic improvement (*Emery* v. *San Francisco Gas Co.*, 28 Cal. 367; *Taylor* v. *Palmer*, 31 Cal. 241; *Chambers* v. *Satterlee*, 40 Cal. 514). While conceding that the effect of these early decisions was to set municipalities free from the

limitations of their charters as to property taxation in so far as the carrying forward of public improvements upon the assessment plan was concerned, the appellants herein undertake to argue that the purchase of an already established water system is not such a public improvement as to take the case out of the limitations expressed in the above-quoted sections of the Municipal Incorporations Act and bring it within the provisions of the Public Utilities Act. We are unable to follow the appellants in this course of reasoning. The Municipal Incorporations Act relating to cities of the sixth class, in section 862, subdivision 3 thereof, permits such cities to acquire, construct, repair, and manage pumps, aqueducts, reservoirs, or other works necessary and proper for supplying water for the use of such cities and the inhabitants thereof, or for irrigating purposes therein. Clearly, the original construction of the reservoirs, aqueducts, mains, and other works and appliances requisite to the creation of a municipal water system would be such a public improvement as to come within the terms of the Public Utilities Act of 1913; and there can be no real distinction between the original construction of such a system by a municipality and its acquisition after its construction by private parties in so far as the nature of the work as a public improvement is concerned, since the same effect is accomplished in either case, namely, that of providing the municipality with a publicly owned improvement which they did not possess before. The title to the Public Utilities Act would seem to indicate that no such distinction as appellants contend for was recognized by the legislature, since it purports to be "An act to provide for the *acquisition,* installation, construction, reconstruction, extension, repair and maintenance by municipalities of water works, etc." (Stats. 1913, p. 421.) We are therefore of the opinion that the city of San Bruno was not limited by the terms of the act under which it was incorporated from adopting the procedure prescribed by the Public Utilities Act for the acquisition of the so-called San Bruno water system, and that the contention of the appellants in that regard is without merit.

The case of *Hopping* v. *City of Richmond,* 170 Cal. 605 [150 Pac. 977], upon which the appellants rely to support their above contention, arose under the particular

provisions of the charter of that city with respect to the right of referendum over the legislative acts ·of the council of that city, and has no application to the facts of the case at bar.

[2] The appellants' next contention is that the power of the board of trustees of the city of San Bruno to create an assessment district for the purpose of the proposed improvement, conceding them to have possessed such power, was exceeded when they created such a district coterminous with the boundaries of the city itself.

The argument in support of this contention turns upon a too narrow interpretation of the term "district" as contemplating a smaller area within the larger boundaries of the municipality. But this narrow meaning has not been given to the word "district" by our lawmakers. In the Street Opening Act of 1889 (Stats. 1889, p. 70) it was expressly provided that the boundaries of a district created for the purposes of street improvement might include the whole city. It is true that the Public Utilities Act of 1913 does not contain this express provision as to the size of the district to be created under its terms; but since it contemplates public improvements such as the creation of water and lighting works and systems, which are usually intended for the use and convenience of all the inhabitants of a municipality, it would seem entirely irrational to give to the term "district" as employed in said act the narrow meaning for which the appellants contend. This is the view that has been taken as to the meaning of this term in other jurisdictions where improvement statutes have been subjected to judicial interpretation. In the case of *Minnesota Land Co.* v. *Billings,* 111 Fed. 972 [50 C. C. A. 70], the circuit court of appeals, in passing upon the provision of a district improvement act of the state of Montana, said: "This provision should be construed with reference to the object which was intended to be accomplished. It is contended by the appellant that because the word 'districts' is used in the plural, and authority is given to create special improvement districts 'within the city,' and to designate the same by number, the statute can only be complied with by creating at least two districts, and that the inclusion of the whole city within a single district is absolutely without authority of law. We think the statute should not be thus

narrowed in its construction. It was intended to confer
the broad power of creating special assessment districts com-
mensurate with the improvement which was required to be
made therein. The word 'special' qualifies the improve-
ment, not the district. The improvement in this instance
affected the whole city. If it had affected three-fourths of
the city it is not disputed that all the area so affected might
have been included within an improvement district. It is
to pursue the same course of reasoning to reach the con-
clusion that by leaving out one block all the remainder of
the city might be included in one improvement district.
The statute undoubtedly was intended to authorize the city
council to make whatever special improvement might be
deemed necessary for the welfare of the city, or any part
thereof. It was to be a continuous power to be exercised
as occasion might arise, and to be adequate to the necessi-
ties of the case—a power to include the whole city in one
district if necessary for an improvement which affected the
whole, or to divide the city into smaller districts for other
special improvements which might affect only the particular
sections so included.''

We think the foregoing correctly expresses the more
liberal construction to be given to the Public Utilities Act
as applicable to the case at bar. The board of trustees
of the city of San Bruno having power, as we have decided,
under the said act to acquire by either construction or
purchase a municipal water system, had also power to create
an assessment district coterminous with the boundaries of
said city if the proposed public improvement was to be for
the benefit of all of its inhabitants.

The foregoing discussion covers, we think, all of the points
urged by the appellants upon this appeal.

Judgment affirmed.

Waste, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court,
after judgment in the district court of appeal, was denied
by the supreme court on December 12, 1921.

All the Justices concurred, except Richards, J., *pro tem.*,
and Waste, J., who did not vote.