## ETHERIDGE *v.* CITY OF ATLANTA.

GILBERT, J. 1. The assessment against respective abutting property owners for the construction of sewers, at $1.50 per lineal foot, is fixed by the amendment of the charter of the City of Atlanta, enacted by the

General Assembly in 1925, and is therefore binding upon the city. Ga. Laws 1925, pp. 839, 840.

2. The act of the General Assembly cited next above does not contravene the due-process clause of the State constitution (Civil Code, § 6359) for any reason assigned.

3. In fixing the amount to be assessed against owners of abutting property to cover the cost of constructing lateral sewers and connections therewith to private property, the cost of building, repairing, and upkeep of trunk sewers and disposal plants may be considered; and for the privilege of connecting with such trunk lines a reasonable sum may be added to the actual cost of lateral sewers and property connections. The amount added, in the present case, is not shown to be unreasonable or confiscatory. *Georgia R. &c. Co.* v. *Decatur*, 137 *Ga.* 537 (2), 541 (73 S. E. 830, 40 L. R. A. (N. S.) 935).

4. It would seem only reasonable and fair to the property-owner for the city to include in one assessment and one fi. fa. the total amount assessed, especially where the property is all in one body, though divided into several lots. We must presume that the city will yet comply with this request, although its refusal is not alone ground for reversing the judgment.

5. The court did not err in refusing to grant an interlocutory injunction for any reason assigned. Moreover, while that issue is not raised, the petitioner had an adequate remedy at law by illegality, and for that reason the court did not err.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Hill, J., who dissent.*

No. 6582. OCTOBER 9, 1928.

*H. A. Etheridge,* for plaintiff.

*J. L. Mayson* and *C. S. Winn,* for defendant.

RUSSELL, C. J., dissenting. The plaintiff by proper exception objects to paying $1.50 per lineal foot for the laying of a sewer in front of her vacant lots in the City of Atlanta, which is shown by the record to have cost the city only 77-1/2 cents for their construction. It also appears from the record that for making connections with this sewer the plaintiff has been assessed and a fi. fa. has been issued against her for the sum of $7 upon each connection in excess of the cost to the city of making them. These facts being undisputed, the question arises whether the city by the passage of an ordinance in pursuance of a provision in its charter can compel a citizen to pay a sum for his share of public improvements greatly in excess of the contract price at which the citizen himself could have procured the work and material necessary to effect a just contribution on his part to the public improvement. In "an act amending an act establishing a new charter for the City of Atlanta, approved February 28, 1874, and the several acts amendatory thereof" (Acts 1925, p. 839), it is provided in section 2 that "In all cases where a sewer shall be laid in the City of Atlanta by or under the authority of said city in any street, the sum of one dollar and fifty cents per lineal foot shall be assessed upon the property and estates respectively abutting on said sewer on each side of said street in which said sewer is laid or constructed, and in consideration of the payment of said assessment the owners of said estates shall have the right to connect their drains from said abutting property for the discharge of sewerage into said sewer. The remaining cost of all sewers not thus assessed shall be paid by said city out of the sewer appropriation for the year." Under the authority of this act of the General Assembly the City of Atlanta claims the right to make the charges and do the acts complained of by the plaintiff, and the city relies upon the ruling of this court in the case of *Georgia R. Co. v. Decatur,* 137 *Ga.* 537 (supra), as controlling authority in support of the judgment of the trial court in this case. The second headnote in the *Decatur* case is as follows: "Under its amended charter (Acts 1903, p. 504) the Town of Decatur was authorized to construct a system of sewerage and to assess against abutting property on each side of a street improved fifty cents per lineal foot. The

legislative determination of the cost of the local public improvement and its apportionment to the abutting land is conclusive as to these matters." The facts of the *Decatur* case, in my opinion, so differentiate it from those in the case at bar that it is not a precedent binding as authority upon this court in the case now before us. It appears from the caption of the act amending the charter of the Town of Decatur that the act for the first time authorized Decatur to construct a system of sewerage and to assess the cost of constructing it against the abutting property. Therefore in that case the court could well follow the decision of the Supreme Court of the United States in French *v.* Barber Asphalt Co., 181 U. S. 324 (21 Sup. Ct. 625, 45 L. ed. 879), in which it was said: "The legislature determines expenditures and amounts to be raised for their payment, the whole discussion and all questions of prudence and propriety and justice being confined to its discretion. It may err, but the courts can not review its discretion." And so this court said: "The legislature having determined that the cost be apportioned to the abutting land on each side of the improvement, the owners of the land have no cause for complaint that the town, upon discovering that it could construct the improvement for a smaller sum, assessed the abutting land at a sum less than that fixed by the statute. It would have been competent for the town to assess the improvement at one dollar per lineal foot, fifty cents of it to be paid by the landowners on each side." Under similar circumstances a similar decision was rendered in Parsons *v.* District of Columbia, 170 U. S. 45 (3) (18 Sup. Ct. 521, 42 L. ed. 943). In the *Decatur* case, supra, the legislature authorized the Town of Decatur to levy an assessment of one dollar per lineal foot, or fifty cents on each of the opposite landowners abutting on the street. The town, having ascertained the cost, levied only forty cents per lineal foot, making only eighty cents levied against the owners of land abutting on both sides of the street. In the case now under review it appears that the cost was ascertained as seventy-seven and one half cents against each of the owners on opposite sides of the street, making the actual cost $1.55; whereas the city is levying instead an assessment of $3—$1.50 upon the frontage of the owners on each side of the street.

As to the $7 excess of charge for the construction of connections

with the sewer as well as the surplus charge of ninety-four and one half cents per lineal foot on the land of each owner abutting on the street, it appears that this excess is levied to keep in repair the sewer system of Atlanta as a whole. Under the provisions of section 2 of the act of 1925, supra, it will be noted that it is enacted that "in consideration of the payment of said assessment ['the sum of $1.50 per lineal foot . . on each side of said street'] the owners of said estates shall have the right to connect their drains from said abutting property for the discharge of sewerage into said sewer." No authority is given by this language for an assessment in excess of the cost, if indeed it may not be inferred, in strictly construing the language, that the city itself would undertake to pay the cost of these connections. The giving to "owners of said estates" the right to connect their drains with the sewer can not, in my opinion, be construed to impose upon them a greater sum than the cost, should the city prefer itself to do the work, than the sum at which the owner could have had the same work and material furnished to himself. Furthermore, the imposition upon landowners in the City of Atlanta fronting upon new additions to the present sewerage system of a charge for the further maintenance of the entire system is, in my opinion, illegal, because it would contravene paragraph 1 of section 2 of article 7 of the constitution of Georgia, which provides that "All taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Certainly all property owners subjected to a tax for the construction of sewers are in the same class, and yet it can be readily seen that if and when the city proceeds to extend its sewerage system to streets heretofore not having sewers, it is permitted to make a profit on the price paid for the construction, the abutting landowners will not receive the benefit of the provisions of section 2 of the act of 1925, supra, that "the remaining costs of all sewers not thus assessed shall be paid by said city out of the sewer appropriation for the year."

The underlying theory supporting the right to assess property to build sewers is the right to enforce a lien against property for the amount expended for the improvement thereof or a mode of taxation whereby the city raises money to pay for public improve-

ments. If it be the purpose of the law to fix a lien, the same principles must be applied as underlie the general lien laws for the improvement of real estate. No one would contend that a materialman could furnish $77.50 worth of lumber for the improvement of realty and file and collect a lien for $150. I can not concur in the argument of the very learned and able counsel for the defendant that the upkeep of the sewer after its construction must be considered as well as the upkeep of the trunk sewer and the disposal plant, because of the language employed in the concluding sentence of section 2 which I have already quoted, and because it appears from the record that the cost of upkeep and maintenance of the sewer itself, the trunk sewer into which it empties and the disposal plant, is paid out of the general tax funds. Plaintiff's property having already been subjected to this general taxation, she has paid her proper share of the maintenance and upkeep of the trunk sewer, etc., and therefore should not be taxed on account of the building of the sewer any more than its actual cost, seventy-seven and one half cents, as compared with the $1.50 sought to be collected. It is my opinion, therefore, that if section 2 of the act of 1925, supra, which the City of Atlanta claims as its authority for the collection of assessment in excess of the actual cost of the improvement, be so construed as that an abutting landowner on a sewer can be compelled to pay more than the actual cost of the improvement and especially for that portion of the improvement which gives him the privilege of connecting "his drains from said abutting property for the discharge of sewerage into said sewer," it is in violation of art. 1, sec. 1, par. 3, of the constitution of Georgia, which provides that no person shall be deprived of life, liberty, or property except by due process of law.