# City of Marion et al. v. Paris et al.

(Decided February 6, 1931.)

J. W. BLUE, JR., C. S. NUNN and JOHN A. MOORE for appellants.

POSTLEWEIGHT & POSTLEWEIGHT and PENTECOST & DORSEY for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming in part and reversing in part.

On April 25, 1929, the board of council of the city of Marion, a city of the fourth class, enacted an ordinance providing for the construction of certain streets of that city, the costs to be apportioned against the abutting property. The streets to be constructed were divided into several sections or projects; East Bellville street being assigned to section No. 11. That part of East Bellville street which was to be improved extended from the east line of North College street to the west line of Cherry street, a distance of approximately 1,073 feet. The width of the street was to be 30 feet. Near the eastern end of East Bellville street as it was to be improved there crossed the roadway a small stream of water which rose about a half mile south of East Bellville street, and which drained a portion of the town and

perhaps county south of that street. The plans and specifications for the improvement of East Bellville street provided for the crossing of this stream by a concrete box 4 by 8 feet. As the stream was to be straightened, it was to be made to cross the street diagonally, and, although the street was but 30 feet wide, the concrete box was 70 feet in length. As constructed, this box would probably be called by the ordinary layman a "culvert," but the appellees insist that in truth it is a bridge. East Bellville street was constructed as planned. The culvert or bridge cost $1,600, and its cost was apportioned along with the cost of the rest of the street against the property abutting on that part of East Bellville street that was constructed. There was also included in the apportionment an item of $661.74 for what the city designated as "legal advice, administration," etc. Challenging the right of the city to include the cost of the culvert or bridge and this item of "legal advice and administration" in the cost of the street to be apportioned against the abutting property, as well as challenging other items in the apportionment, the appellees, abutting property owners, brought this suit to purge the apportionment of the challenged items. The court struck from the apportionment the cost of the culvert or bridge and the item of "legal advice, administration," etc., but denied the appellees any relief as to the other items challenged. Appellees rested satisfied with the court's judgment, but the defendants below have appealed.

We do not deem it necessary to determine whether the concrete box was in fact a culvert or a bridge. In either event, its cost was properly included in the cost of the street and properly apportioned against the abutting property. The cases of City of Hazard v. Adams, 229 Ky. 598, 17 S. W. (2d) 703, where the structure was called a culvert, and Downing v. City of Chinnville, 237 Ky. 121, 33 S. W. (2d) —, decided January 23, 1931, where the structures were called bridges, fully sustain the appellants, in such contention. Their reasoning need not be repeated here. Appellees would distinguish the Hazard Case and no doubt the Chinnville Case but for the fact that it had not been decided when they briefed this case, on the ground that as shown by the record East Bellville street is a part of the route through the city of several states and county highways which focus just east

and west of the city limits of Marion. But that East Bellville street, being one which perhaps the state highway commission might have shared the cost of the building, did not prevent the city from itself building such street, was held in Shaver et al. v. Rice, 209 Ky. 467, 273 S. W. 48. The case of City of Pineville v. Robbins, 232 Ky. 218, 22 S. W. (2d) 607, 609, is relied upon by the appellees. In that case, the city decided that the bridge was not a local improvement but one general to the community. The size and character of the structure as well as its use justified the decision. The decision was not rested alone on the use, for, were that the law, the county could be compelled to pay for street construction in cities as well as bridge construction. The size, character, and cost of the structure plays as important a part in the rule as does its use. That this is so may be seen from this excerpt from the opinion: "Culverts, or such small bridges as are essentially a part of the street, should be built and maintained by the city; but bridges which span streams, and are not fairly a part of the street, rest on a different ground, when they are for the common benefit of the people of the city and the people of the county outside of the city"—which is but a repetition of what we said in Nelson County v. City of Bardstown, 124 Ky. 636, 99 S. W. 940, 30 Ky. Law Rep. 870.

Under the doctrine of the Hazard and Chinnville Cases, the decision of the question whether the concrete structure which carried East Bellville street across the water course was a part of the street construction or not lay with the city council, and plainly, under the cases cited, it cannot be said that discretion was abused. The chancellor erred in striking the cost of this culvert or bridge from the cost apportioned against the abutting property.

Coming now to the item of "legal advice, administration," etc., we find that it is stipulated in the record that in calculating the costs of the streets which were improved under the ordinance of April 25, 1929, there was included $1,000 "to cover any legal services that may be required in enforcing the collection of assessments, or in sustaining the ordinances and assessments in regard to the improvements on Bellville and Depot streets," and also $1,284.04 "to cover the cost for the services of the Treasurer in collecting the assessments, keeping account thereof and paying same over to the

bond holders, and includes $100 per year of the Treasurer's salary for the period of ten years over which the bond shall run, cost of printing ordinances, advertising, notices and bonds and such other incidental matters as may come up in the administration or carrying out the ordinances and of the funds for liquidation of the bonds and improvements.'' These sums were included in the aggregate of the items going to make up the collective item of ''legal advice, administration, etc., for the whole street improvement program and amounting to $2,853.34. The cost of the entire improvement program was $65,-485.99, and the cost of project No. 11 in which East Bellville street lay was $15,187.25. So the city council allocated to project No. 11 the same proportion of $2,853.34 as exists between $15,187.25 and $65,485.99. The amount so allocated was $661.74. This is the item which the chancellor struck from the apportionment. To the extent that it includes any attorney fees or treasurer's salary, we are of opinion that his action was correct.

In the case of Board of Councilmen of City of Frankfort v. Jillson, 225 Ky. 61, 7 S. W. (2d) 859, there was involved the right of the city to include in the costs of streets apportioned against abutting property engineering fees. Recognizing the rule that, where the city charter does not require a city to employ a city engineer, a city may employ an engineer in street construction and include his fees in the cost of streets apportioned against the abutting property, we held that, where the charter requires a city to employ an engineer, it must pay his fees and it cannot include them in the cost of streets apportioned against abutting property.

In Saufley v. City of Hazard, 209 Ky. 795, 273 S. W. 488, we held that under the statute it is the duty of treasurers of cities of the fourth class to collect the assessments for street improvements whether paid in cash or on the ten-year bond plan, and to account for the same, and a city could not place these duties upon the city clerk.

Section 3554 of the Statutes, being part of the charters of the cities of the fourth class, makes it mandatory upon cities of the fourth class to elect a city treasurer.

It being the duty of the city of Marion to elect a city treasurer, and the duty of collecting the street assessments here in question and keeping account of same and paying them out to the proper persons being a part of

his official duties under the statute, as the Saufley Case holds, it follows under the rule of the Jillson Case, supra, that the city had no right to include $1,000 of his salary in the cost of the streets to be apportioned against the abutting property. Hence the elimination of this item was proper.

The attorney's fee of $1,000 included in the assessment was, as stipulated, "to cover any legal services that might be required in enforcing the collection of assessments, or in sustaining the ordinances and assessments in regard to the improvements on Bellville and Depot streets."

It will be noted that, at the time this fee of $1,000 was included in the assessment, no legal services had been rendered for which the fee was provided, nor was it known that any such services would ever be actually rendered or required. Nor was this fee provided for the cost of collecting assessments in the usual and normal course of such collections. It was for the collection of assessments from recalcitrant property owners, and not for the collection of assessments from those who would pay without a lawsuit. In such state of case, we are of opinion that such a fee is in no real sense any cost of the construction or doing of the work for which the assessment is levied. Only such costs as enter into the construction or doing of the work can be included in the total costs to be apportioned. It does not appear in Shaw v. City of Mayfield, 204 Ky. 618, 265 S. W. 13, just what the legal services were, the fee for which was included in the cost of the work apportioned against the abutting property owners. Some legal services would clearly be properly included. But not those of the character here involved, and the doctrine of the Shaw Case will not be extended to cover any such legal services. The cost for such legal services must be paid by the city and not apportioned to the abutting property owners.

In so far as the judgment of the chancellor eliminated from the apportionment the cost of the concrete culvert or bridge, it is reversed, with instructions to dismiss appellees' petition on this score. In all other respects, the judgment of the chancellor is affirmed.

Whole court sitting.