STATE ex rel. GRIFFITH, Appellant, v. CITY OF
SHELBY et al., Respondents.

(No. 7,823.)

(Submitted June 2, 1938. Resubmitted January 10, 1939. Decided February 8, 1939.)

[87 Pac. (2d) 183.]

*Mr. M. L. Parcells* and *Messrs. Blenkner & MacFarlane,* for Appellant, submitted a brief; *Mr. E. A. Blenkner* argued the cause orally.

*Mr. E. K. Cheadle, Jr.*, for Respondents, submitted a brief, and argued the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

In the winter of 1919–20 Special Improvement District No. 6 of the city of Shelby, Montana, issued 66 special improvement bonds in denominations of $500 each, except the last which was for $534.15. The bonds were substantially in the statutory form, were dated October 1, 1919, matured on January 1, 1930, and bore coupons for six per cent. interest to maturity; they were numbered consecutively and registered in their numerical order. Fifty-four of the bonds were called from time to time and paid in full, and the interest on all 66 bonds, as represented by the coupons, was paid to January 1, 1930, when the principal became due. On account of heavy assessment delinquencies, the remaining 12 bonds are still unpaid, and there is but the sum of $1,249.20 in the hands of the city treasurer for their payment, with the accrued interest thereon from January 1, 1930, if such interest is payable.

In this action relatrix, the owner of bond No. 55, the next in order of registration, sought a writ of mandate to compel the payment of her bond, with interest from January 1, 1930, out of the sum of $1,249.20 on hand, together with damages in the sum of $100, attorneys' fees and costs. A copy of the bond was annexed to the complaint as an exhibit. An alternative writ was issued as prayed for, with an order to show cause. The answer to the alternative writ is in the nature of a general

denial, followed by the further defense that section 5249, Revised Codes, requires the city treasurer "before redeeming said bonds or paying the principal thereof, to first pay out of the special improvement district fund the interest on all outstanding bonds, and to apply any balance remaining to the payment of the principal and the redemption of the bonds in the order of their registration." It is further alleged that there is accrued interest on the outstanding bonds in a sum largely in excess of the amount remaining in the fund, and that the defendants are prohibited by the statute from paying and retiring the bond of relatrix until the accrued interest has been paid upon all outstanding bonds. The further defense is denied by the reply.

By stipulation of counsel all questions of fact were eliminated and the issues reduced to the sole question of priority of payment as between the bond of relatrix and the accrued interest on all outstanding bonds of the issue.

The court's findings were in substantial harmony with the facts stipulated, and thereupon the court concluded that the funds on hand were first applicable to interest, and therefore entered judgment discharging the alternative writ. Relatrix thereupon perfected this appeal, in which error is assigned on the court's discharge of the alternative writ of mandate and its refusal to make the writ peremptory.

Most of the argument on both sides is directed toward the interpretation of the provisions of section 5249 with regard to interest. Section 5249 provides that the bonds "shall bear interest at the rate of six per cent. per annum, from the date of registration until called for redemption or paid in full * * * , if interest coupons be attached thereto, they shall also be so registered. * * * Such * * * bonds shall be redeemed by the treasurer when there are funds in the special improvement district fund against which said * * * bonds are issued available therefor; provided, that the treasurer shall first pay out of such * * * fund annually the interest on all outstanding * * * bonds, on presentation of the coupons belonging thereto, and any funds remaining shall be ap-

plied to the payment of the principal and the redemption of the * * * bonds in the order of their registration; and provided, further that whenever there are any funds in any special improvement district fund, after paying the interest on such * * * bonds drawn against said fund, the treasurer shall call in for payment outstanding * * * bonds, which, together with the interest thereon to the date of redemption, will equal the amount of said fund on that date," etc.

Section 5249 also provides that the bond form shall contain substantially the following statement: "This * * * bond bears interest at the rate of six per cent. per annum from the date of registration of this * * * bond, as expressed herein, until the date called for the redemption by the city treasurer. The interest on this * * * bond is payable annually on the first day of —— in each year, unless paid previous thereto, and as expressed by the interest coupons hereto attached, * * * ."

Respondents and the court below construe these provisions as requiring the treasurer to pay interest after maturity on any and all bonds remaining unpaid, before paying the principal of the first unpaid bond. On the other hand, appellant contends that, since bond coupons are attached only for the period to maturity, the above preferential authorization for payment of interest "on presentation of the coupons belonging thereto," and "as expressed by the interest coupons hereto attached," is necessarily limited to interest for the period before the maturity of the bonds; although the expression in section 5249 "if interest coupons be attached thereto," indicates that there need be none attached.

In any event, it is apparent that the question here is not whether interest accrues on special improvement bonds after maturity, but whether such interest, if it accrues, has priority over the unpaid principal. The general law relating to special improvements, together with the legislative enactment relative to the fund for payment of principal and interest of special improvement bonds, would seem to dispose of this question quite definitely.

It is well settled that special improvement district bonds are not general obligations of the city, and that their payment is strictly limited to the fund provided by the statutes and by the city ordinances adopted thereunder. It is also well settled that the lien of the special improvement assessments extends to each lot or parcel of land separately and not jointly, and that when the assessments against one lot or parcel are paid, or tax deed is issued to a lot or parcel, the lien is discharged. (*School District No. 1* v. *City of Helena,* 87 Mont. 300, 287 Pac. 164; *State ex rel. City of Great Falls* v. *Jeffries, County Treasurer,* 83 Mont. 111, 270 Pac. 638.)

Section 5240 provides that to defray the cost of the improvements the city council shall by resolution levy and assess a tax upon the property in the district, to be spread over a term not to exceed twenty years, payable in equal annual installments. The assessments must necessarily include the interest on the bonds to maturity as an essential part of the costs of making special improvements under this system. (44 C. J., sec. 3089, p. 647.)

The resolution of intention to create Special Improvement District No. 6 provided that the assessments "shall be paid for in ten (10) annual installments, and are to be extended over a period of ten (10) years." The resolution for the issuance of the bonds provided that they should be dated October 1, 1919, and should become due on January 1, 1930, ten years and three months later. According to the agreed statement of facts they were actually issued "on or prior to" February 3, 1920. The natural assumption was that they would be paid when due, and, on the other hand, that they might not be paid before that time although they were subject to earlier call if the fund permitted. Any attempt to include in the assessments a provision for interest after maturity would necessarily involve a guess as to what, if any, bonds might be outstanding after maturity, and how much money might be required for the payment of interest after that date; and it would have constituted an attempt to include as part of the cost a speculative and indeterminate element which might never exist. Whether

this should have been done regardless of its utterly speculative character is the essential question here, for, if possible interest after bond maturity constitutes a proper element of the cost of an improvement and is included within the legislative provision for the preferential payment of interest, the assessments for the fund should provide accordingly.

In any event, it is clear that, having decided upon the issuance of bonds payable in not over ten years and three months, it became the duty of the city council to provide a fund sufficient to pay the principal of the bonds with ten years and three months' interest, by means of a definite number of equal annual assessments. (Sec. 5240, Rev. Codes.) If necessary, the making of the requisite assessments could have been compelled by law. But the council apparently made the levies and, but for delinquent assessments, all the bonds would have been paid and retired at or before maturity; and none could have remained outstanding so as perhaps to bear further interest. It was only by reason of delinquent assessments that this question of interest after maturity could have arisen, and manifestly if such interest ever accrues it can only be because delinquencies have prevented the payment of the bonds at maturity. This fact furnishes the answer to the sole question in the case, namely: whether by the provision of section 5249, making interest payable out of the fund in preference to principal, the legislature meant, or could have meant, to include interest after maturity. Necessarily, if it meant to include such interest, the assessments it authorized were for a fund sufficient for the purpose; but in that case the legislature necessarily meant to include in the assessments against all property an item which could never accrue except by reason of delinquent assessments on certain property, resulting in bond maturity defaults, as shown above. This it could not constitutionally do.

The whole theory of special improvement assessments is that they must be equalled by the benefits. It is well settled that the assessment can in no event exceed either the benefit derived from or the cost of the improvement, and that it cannot transfer to certain property additional burdens resulting from the delin-

quencies of others. (*Power* v. *City of Helena,* 43 Mont. 336, 116 Pac. 415, 36 L. R. A. (n. s.) 39; *School Dist. No. 1* v. *City of Helena,* supra; *State ex rel. Malott* v. *Board of County Commrs. of Cascade County,* 89 Mont. 37, 296 Pac. 1; 44 C. J. 637, sec. 3071; Id., 638, sec. 3072.)

It is, therefore, our opinion that the assessments to provide the fund for the payment of the bonds in question did not provide, and could not provide, for interest after maturity of the bonds, and that it was not, and could not have been, the legislative intent to include in section 5249 interest after maturity.

It necessarily follows that the principal of appellant's bond is entitled to payment in preference to interest after maturity on any of the bonds; and that, as the next bonds in order of registration will then have the same preference right, appellant is not now entitled to an order for the payment of interest on her bond after maturity.

Whether interest accrues upon special improvement bonds after maturity, and under proper circumstances becomes payable, cannot here be decided. That question will arise only if, by reason of the eventual payment of delinquent assessments with interest and penalties, money remains in the fund after paying the principal of all the defaulted bonds.

It follows from what has been said that a peremptory writ should issue for the payment, out of the special improvement district fund, of the principal only of appellant's bond, and that she is entitled to recover from the respondent city of Shelby her costs and such reasonable attorneys' fees, if any, as the trial court may allow, no showing of other damages having been made, this court having determined that the respondent Bruce R. McNamer, as city treasurer of the city, appeared and made defense to this proceeding in good faith.

The judgment below is therefore reversed, and the cause remanded to the trial court for further action in accordance herewith.

ASSOCIATE JUSTICES MORRIS, ANGSTMAN, ERICKSON and STEWART concur.