[L. A. No. 25841. In Bank. Jan. 6, 1961.]

THE CITY OF LOS ANGELES, Petitioner, v. MILTON OFFNER, Respondent.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, John D. Barrett, John F. Feldmeier, Weldon L. Weber and William F. Powers, Deputy City Attorneys, for Petitioner.

Thomas P. McBride, City Attorney (Concord), William W. Coshow, City Attorney (Redding), Sturgis, Den-Dulk, Douglass & Anderson and Eugene K. Sturgis as Amici Curiae on behalf of Petitioner.

William Mackenzie Brown and Roscoe R. Hess for Respondent.

SCHAUER, J.—The city of Los Angeles seeks mandate to compel respondent, secretary of the city's board of public works, to post and publish notices inviting bids for certain sewer construction work authorized by city ordinance pursuant to the Improvement Act of 1911 (as codified in Sts. & Hy. Code, §§ 5000-6794). The ordinance which declares the city council's intention to construct the improvement includes, as part of the proposed special assessment, "a connection charge for outlet facilities" purportedly authorized by subdivision (i) of section 5024 of the Streets and Highways

Code (added to such section by Stats. 1959, ch. 158 and ch. 825).[1]

Respondent refused to post and publish notices as ordered by the city council, and now demurs to the petition for mandate, on the ground that it does not state facts sufficient to constitute a cause of action in that subdivision (i) of section 5024 and the ordinances providing for the special assessment and directing the local improvement are unconstitutional. Respondent urges that subdivision (i) improperly purports to permit inclusion in a special assessment of "charges" which are not part of the actual costs and expenses of the local improvement; that such statute is unconstitutionally indefinite; and that the ordinances providing for the proposed special assessment and directing the improvement are invalid because they include such a "charge" in the assessment. For the reasons hereinafter stated we have concluded that the subject statute (Sts. & Hy. Code, § 5024, subd. (i)) and the local legislation insofar as it includes the charge purportedly authorized by subdivision (i) are invalid.

Los Angeles Ordinance 115574 (adopted and approved in February 1960) declares the intention of the city council to improve a described sewer district by construction of sanitary sewers and appurtenances and house connection sewers in accordance with certain plans and specifications. The ordinance provides that the proceedings for the improvement shall be had in accord with the Improvement Act of 1911, and that "the estimated total cost and expense of the improvement is $390,372.26."[2] It further provides, among other things, as follows:

"Sec. 3. The said contemplated work or improvement, in

---

[1]Section 5024 provides that " 'Incidental expense' [which can be made part of the costs and expenses to be assessed against the lands in the assessment district] includes: . . . (i) In the event that the construction of sewers or appurtenances incident thereto shall have been ordered, *any charge that shall have been established by the city as a condition to the providing of sewer service to properties in the assessment district.*" (Italics added.)

[2]Not all the cost of the improvement is to be assessed against the district, nor is the amount to be assessed effectively tied either to the cost of the specific improvement or to the benefit to the specific property. According to its title, the ordinance is one "declaring [among other things] the work or improvement to be of more than local or ordinary public benefit." And section 10 of the ordinance provides, "*An allocation of public funds* may be made to defray the estimated *excess costs* and expenses *of the interceptor type sewer* over that of a local sewer of normal size and depth, *not to exceed*, however, $60,373.38 or 15.5 per cent of the total final costs, whichever is the lesser.

"The final ordinance ordering this improvement shall not be presented

the opinion of the Council, is of such nature that the costs and expenses should be assessed in proportion to estimated benefits arising therefrom;[3] and the Council hereby makes the assessable costs and expenses of said work or improvement chargeable upon a district which district the Council hereby declares to be the district benefited by said work or improvement and to be assessed to pay the costs and expenses thereof.''

''Sec. 7. That the incidental expenses of the work to be charged upon the district . . . shall be in the amount of the actual costs incurred in connection with the work described herein, provided, however, that the amounts to be assessed for such expenses shall, in the aggregate, in no case exceed either 12% of the contract price or $500, whichever is the larger [but see the exception declared in the next paragraph] ; and that any incidental expenses incurred for consummation of this work in excess of these limitations shall be . . . defrayed from the budgeted funds of the departments concerned.

''Notwithstanding said limitation,[4] *in addition to the said incidental expenses* of the work, *a charge for outlet facilities,* that has been established by the City *in an amount equal to $400 per acre* as a condition to the providing of sewer service to properties in the assessment district, *will be assessed as an incidental expense* against such properties therein as may be served by the proposed sewers and subject to the charges in accordance with Section 64.16.1 of the Los Angeles Municipal Code.'' (Italics added.) This charge of $400 an acre gives rise to the present litigation.

---

to the Council until funds have been made available for said purpose.'' (Italics added.)

After adopting Ordinance 115574 the city council appropriated such $60,373.38 but, as shown in the text of the opinion (*infra*, p. [6]), *this sum is not an offset against the arbitrary charge of $400 an acre* assessed ''as a condition to the providing of sewer service to the properties in the assessment district.''

[3]Apparently this section, in declaring that ''the costs and expenses should be assessed in proportion to estimated benefits arising therefrom,'' means only that they should be assessed in this manner among the various lots in the assessment district, and is not a determinative finding that the *whole* assessment equals the benefits to the *whole* district.

[4]This peculiar provision bears reading twice: ''Notwithstanding said limitation, in addition to the said incidental expenses of the work, a charge for outlet facilities . . . in an amount equal to $400 per acre . . . will be assessed as an incidental expense''; this *additional* ''incidental expense'' assessment of $400 an acre is specified to be ''a condition to the providing of sewer service to properties in the assessment district.'' One well may ponder as to what, if any, benefit the specially assessed property could receive from the basic work if the additional $400 an acre charge were not paid.

Section 64.16.1 of the Los Angeles Municipal Code (as amended December 1, 1957) provides (with immaterial exceptions) that "Before granting a permit to connect any lot or parcel not already connected to a public sewer or house connection sewer . . ., the Board shall require, in addition to all other charges and fees imposed by Sec. 64.12 to Sec. 64.22, inclusive [which concern various other sewer charges], the payment by the applicant therefor of a fee for a connection charge for outlet facilities of an amount equal to $400 per acre of the property to be served. . . ." A preliminary spread of the proposed assessment based on estimates shows that the total amount of these charges of $400 an acre to be assessed against the properties in the district will be $46,934.

Ordinance 115829, adopted and approved in April, 1960, orders that the work described in Ordinance 115574 be done and that notices inviting bids be given as provided in the Improvement Act of 1911. As previously stated, respondent refused to publish and post the notices, and this litigation followed.

The theory of special assessments for local improvements such as the one here under discussion is stated as follows in *County of San Diego* v. *Childs* (1932), 217 Cal. 109, 117 [5] [17 P.2d 734]: "The improvement must confer a special benefit upon the property assessed. [Citation.] [2] *The assessment can be levied only for the actual cost of the improvement* 'and the local authorities cannot include in the assessment the expense of any other work than such as is necessary to complete the particular improvement in a reasonable and fair mode.' ([Italics added.] 2 Elliott on Roads and Streets, 4th ed., p. 892.)" The view that the Legislature cannot properly authorize a special assessment for a local improvement in an amount which exceeds the actual cost of the improvement and necessary incidental expenses, is also expressed or implicit in the following cases: *Spencer* v. *Merchant* (1888), 125 U.S. 345, 353, 355 [8 S.Ct. 921, 31 L.Ed. 763]; *Southwick* v. *City of Santa Barbara* (1910), 158 Cal. 14, 19 [109 P. 610]; *Prospere* v. *City of New Port Richey* (1929), 98 Fla. 508, 510 [124 So. 2]; *City of Camilla* v. *Cochran* (1925), 160 Ga. 424, 431 [128 S.E. 194, 197 [3]]; *Davis* v. *City of Litchfield* (1893), 145 Ill. 313, 325, 328 [33 N.E. 888, 21 L.R.A. 563]; *Union Building Assn.* v. *City of Chicago* (1871), 61 Ill. 439, 442; *City of Marion* v. *Paris* (1931), 237 Ky. 305, 309 [35 S.W.2d 311,

313] ; *State* ex rel. *Griffith* v. *City of Shelby* (1938), 107 Mont. 571, 577 [87 P.2d 183, 186] ; *City of Asheville* v. *Wachovia Loan & Trust Co.* (1906), 143 N.C. 360, 366 [55 S.E. 800] ; *In re Mill Creek Sewer* (1900), 196 Pa.St. 183, 187 [46 A. 312] ; *Vincent* v. *City of South Bend* (1915), 83 Wash. 314, 317-318 [145 P. 452] ; *Bekkedal* v. *Viroqua* (1924), 183 Wis. 176, 197 [196 N.W. 879, 887] ; *Hardy* v. *Waukesha* (1911), 146 Wis. 277, 278 [131 N.W. 352].

In *Maryland Trust Co.* v. *Baltimore* (1915), 125 Md. 40, 50 [93 A. 454], the court quotes as follows from Gray, Limitations of Taxing Power (1906), § 1883: " 'Any substantial excess of assessment over cost would be general taxation of the particular district in disregard of all mandates of equality. A law which should direct or inevitably compel such a result would doubtless be held void anywhere in the United States as an act of confiscation.' " The Maryland legislation there under consideration did not "direct" or "compel" such result but, according to the construction thereof urged by the city, would have permitted it. It is held (pp. 50-51 of 125 Md.) that "Although the usual constitutional mandate enjoining equality and uniformity in taxation does not generally apply to special assessments for local improvements, if a statute permitted a municipality to make such assessments in excess of the cost of the improvements, and the expenses incident thereto, it would unquestionably be contrary to Article 15 of our Bill of Rights, for such assessments would require those so assessed to contribute to the support of the government, to the extent of the excess, as other taxpayers are not required to do." The Maryland court also (pp. 48-49 of 125 Md.) rejects the contention of the city of Baltimore (pp. 42-43 of 125 Md.) that "it makes no difference to the [assessee] . . . whether the aggregate benefits assessed exceed or fall short of the cost of the improvement, because the [assessee] . . . cannot be injured so long as its assessment does not exceed the actual benefit received by it."

The principles of equality and uniformity invoked by the Maryland court are similarly applicable to local special assessments in California. Specifically, an assessment exceeding the cost of the improvement, so as to furnish revenue to the city, would violate the general principle of equality stated in section 1 of Article XIII of our state Constitution, which provides that "All property in the State except as otherwise in this Constitution provided, not exempt under

the laws of the United States, shall be taxed in proportion to its value. . . .''

Even more obviously obnoxious to constitutional principles than the construction urged by the city of Baltimore (and rejected by the court) of the statute considered in the Maryland Trust Co. case, the legislation which we pass upon here (both state and local) purports to authorize an assessment in an amount greater than the cost of the local improvement. Subdivision (i) of section 5024 of the Streets and Highways Code says that an assessment for sewers can include ''any charge that shall have been established by the city as a condition to the providing of sewer service to properties in the assessment district,'' without requiring that such charge represent an expense incurred by the local governing body incident to the construction of the particular sewers for which the assessment is made. And Ordinance 115574 does not assume to limit or relate the ''charge for outlet facilities'' to the cost of the subject improvement.

It is apparent that the amount of the $400 an acre charge was not fixed with specific reference to the cost of providing sewer connections of the properties in this particular assessment district with the proposed local improvement, since such amount is a general, city-wide charge established in 1957, whereas the state statute purporting to authorize inclusion of such charges in a special assessment was not adopted until 1959 and the city ordinances providing for the subject improvement and including the $400 an acre charge in the assessment were not adopted until 1960. Furthermore it is apparent from the following argument of the city that under local legislation the $400 an acre charge purportedly can be used to construct sewers which are not a part of the subject improvement and which will not be of local benefit to the subject assessment district: ''The Municipal Code of the City of Los Angeles, in Section 64.19.1(a) within the Article entitled 'Sewers, Water Courses and Drains,' provides that all *moneys collected pursuant to Sections* 64.11.2, 64.15, *64.16.1* and 64.18 shall be deposited in the Private Sewer Construction Account in the Board of Public Works Trust Fund. Subsection (b) of said Section 64.19.1 further provides that the *moneys in the said Account may be used for the construction of outlet sewers for which the City is obligated, or . . . to pay the whole or any part of the costs and expenses* of the construction of *any outlet sewer under Improvement Act of 1911 proceedings if the same are constructed*

*beyond the frontage of properties that may be served thereby* or at a greater depth or of a greater size than would normally be required to serve abutting properties in the assessment district.'' (Italics added.)

Also, as the following quotation from the city's argument shows, it takes the position that the state statute and pertinent local legislation contemplate that the $400 an acre charge to be collected as part of the special assessment can and will be used for the cost of maintaining sewers and furnishing services which benefit properties not in the subject assessment district: ''The Legislature, in its enactment of subsection (i) may be considered as expecting that any city establishing the charge for furnishing sewer service would do so as accurately and equitably as possible, based on its local conditions, experience and needs and with the best expert advice available concerning *expenses incurred and to be anticipated for maintaining its sewer system and furnishing sewer service.* It may be assumed in this proceeding that official duty has been and will be regularly performed and that the amounts that may be received from the charge will approximate fairly the total expenditures that will be necessary for *the sewer system,* and that, within each city, the application and amount of the charge will be definite and fair.'' (Italics added.) It is apparent from the nature of the Los Angeles sewer system that the city's proposals to use the $400 an acre ''connection charges'' for general sewer purposes (outlet sewer construction and sewer system maintenance, without limitation to the expense of furnishing sewer service to the lands in the subject local assessment district) could divert those funds to payments which would benefit properties far removed from the local district. The Los Angeles sewer system includes the Hyperion sewage treatment plant, submarine tube, and outfall sewers which the city was required to construct by a 1946 decree in an action by the state to abate a nuisance and to restrain Los Angeles and other municipal and public corporations from discharging sewage into Santa Monica Bay without a permit. (See *People* v. *City of Los Angeles* (1948), 83 Cal. App.2d 627, 645 [189 P.2d 489].) Los Angeles (with other defendants in the abatement action) must bear its share of the costs of operating and maintaining those works pursuant to such decree, which provides for continuing supervision by the court. (See *People* v. *City of Los Angeles* (1948), *supra,* p. 643 [3] of 83 Cal.App.2d, and *City of Vernon* v. *City of Los Angeles* (1955), 45 Cal.2d 710, 714 [290 P.2d 841].)

■ As the city has said in oral argument of this case, the disposal through the Hyperion plant of sewage from the Los Angeles system "is a burden imposed by law upon the city" by the decree in *People* v. *City of Los Angeles* (1948), *supra*, 83 Cal.App.2d 627. The essential service is, of course, in a broad sense, for the benefit of the entire city, of all the people in the city and of all the land in the city. The cost of sustaining the burden is a direct liability of the city and its seeking of new sources of funds is understandable but it cannot follow, within our constitutional framework, that each parcel of land in Los Angeles which is furnished with and connected to a new local sewer can be *specially assessed* for some share of the whole outfall and treatment operation in addition to its share of the cost of the local improvement. To hold otherwise would be to permit the city to divert special assessment funds to general taxation purposes.

■ The city urges that because it has appropriated from its private sewer construction account the $60,373.38 described in footnote 2, *supra*, whereas the proposed assessment of sewer connection charges will amount to only an estimated $46,934, it appears that the property owners in the assessment district will receive a return from the proposed improvement greater than the amount of the disputed charges. But, as stated in Ordinance 115574, the proposed improvement is "of more than *local* or ordinary public benefit" and the $60,373.38 was appropriated "to defray the estimated costs and expenses of the interceptor type sewer over that of a *local sewer of normal size and depth.*" (Italics added.) It thus appears from this argument that the city is of the mistaken view that the properties in the assessment district can be required, by including the sewer connection charges in the assessment, to bear the cost of an improvement in an amount which substantially exceeds the special benefit to those properties from the proposed construction. This is contrary to the basic theory that "The compensating benefit to the property owner is the warrant, and the sole warrant, for the legislature to impose the burden of a special assessment. [Citation.] The improvement must confer a special benefit upon the property assessed. [Citation.]" (*County of San Diego* v. *Childs* (1932), *supra*, 217 Cal. 109, 117.)

■ It is true that the city's petition for mandate does not *expressly* show that the $400 an acre charge does or does not represent actual expense to be incurred by the city incident to the work of constructing the subject improvement or of fur-

nishing future service to the property assessed. We are mindful of our duty to so construe legislation as to save its constitutionality if that is reasonably possible (*Palermo* v. *Stockton Theatres, Inc.* (1948), 32 Cal.2d 53, 60 [195 P.2d 1]), and of the particular application of the rule imposing such duty where the validity of an assessment is attacked (*Banaz* v. *Smith* (1901), 133 Cal. 102, 105 [65 P. 309]; *Hadley* v. *Dague* (1900), 130 Cal. 207, 221 [62 P. 500]). But since the state and local legislation permit, and the city frankly proposes to effect, unequal taxation of real property in the guise of a special assessment for a local improvement, it appears manifestly inappropriate for this court to uphold this particular assessment on the theory that (by virtue of liberally construing the petition in favor of the pleader) there is a bare possibility that the amount to be assessed is not improper, and to uphold the general legislation on the theory that (by virtue of the presumption of constitutionality) other local political subdivisions may perhaps not act unconstitutionally pursuant to such legislation. The dubiety of reliance on the presumption of constitutionality here is further indicated by the fact that municipalities other than Los Angeles, as amici curiae, urge that the statute can properly be applied in a manner such as that proposed by Los Angeles.

Petitioner argues that the Legislature, in defining "incidental expense" to include "any charge that shall have been established by the city as a condition to the providing of sewer service" (Sts. & Hy. Code, § 5024, subd. (i)), acted within the rule that "When a legislative body enacts a statute which prescribes the meaning to be given to particular terms used by it, that meaning is binding upon the courts" (*Rideaux* v. *Torgrimson* (1939), 12 Cal.2d 633, 636 [2] [86 P.2d 826]), whether or not the statutory definition conforms to definitions used for other purposes (*Trabue Pittman Corp.* v. *County of Los Angeles* (1946), 29 Cal.2d 385, 393 [3] [175 P.2d 512]). Such rule, however, cannot sustain a definition the operative effect of which is unconstitutional.

The city and amici curiae, in attempts to show that the subject statute and local legislation accord in theory with other legislation the constitutionality of which has not been attacked, cite a number of statutes which have provided that various types of districts can fix and collect sewer connection charges and some of which provide that such charges can be made a lien on the land in the district. The existence of such statutes does not raise, or contribute to the solution of, the

problem of the indefiniteness of subdivision (i) of section 5024, which indefiniteness has led to the invalid inclusion in the subject special assessment for a local improvement of a connection charge which is not measured by the actual cost of the improvement and is mistakenly proposed for use, not to pay for the cost and expense of the local improvement only, but to pay for maintenance or improvements which will benefit the sewer system generally or properties other than those in the special assessment district.

In view of our above stated conclusions, other contentions of the parties do not require particular discussion.

Respondent's demurrer is sustained and the petition for mandate is denied.

Peters, J., White, J., and Lillie, J. pro tem.,* concurred.

GIBSON, C. J.—I dissent.

Section 64.16.1 of the Los Angeles Municipal Code, as amended in 1957, requires the payment of a fee of $400 per acre as a charge for connection with the city's outlet sewer facilities. This charge was collected, prior to 1960, separate and apart from any special assessments for local sewer improvements, and the landowners, after being assessed for the local improvements, were required to pay the charge in a lump sum before they could use the local improvement. It is undisputed that the $400 per acre charge for connection with the outlet facilities of the city's system is reasonable in amount and that the municipal code section imposing the charge is valid. By enactment of subdivision (i) of section 5024 of the Streets and Highways Code in 1959 the Legislature authorized inclusion of such a charge in special assessments as an incidental expense, and when thereafter, in 1960, the assessment before us was adopted by ordinance 115574, the charge was included in the amount assessed. The landowners within the district may pay the amount of the assessment over a period of years.

The majority holds that subdivision (i) of section 5024 of the Streets and Highways Code and the 1960 ordinance, insofar as it includes the charge authorized by subdivision (i), are unconstitutional. The holding is based solely upon an asserted violation of section 1 of article XIII of the state Constitution which provides, ''All property in the State . . .

*Assigned by Chairman of Judicial Council.

shall be taxed in proportion to its value. . . ." This provision, as we shall see, is not applicable to the situation before us.

The rule is well settled that a city is entitled to require payment of a reasonable charge as a condition to connection with or use of its sewer system. (*Harter* v. *Barkley,* 158 Cal. 742, 745-746 [112 P. 556]; *Longridge Estates* v. *City of Los Angeles,* 183 Cal.App.2d 533, 539-540 [6 Cal.Rptr. 900]; *Cramer* v. *City of San Diego,* 164 Cal.App.2d 168, 171-172 [330 P.2d 235]; Health & Saf. Code, § 5471; The Sewer District Act of 1899 (Stats. 1899, ch. 66, p. 81 [formerly Health & Saf. Code, §§ 4659-4667, repealed Stats. 1959, ch. 1309, p. 3581]); see *City of Glendale* v. *Trondsen,* 48 Cal.2d 93, 101-103 [308 P.2d 1]; 11 McQuillin, Municipal Corporations, § 31.30, pp. 238-240.) Such a charge, which merely represents payment by landowners for services of special benefit to them, is not a property tax subject to the constitutional requirements of equality and uniformity like those of section 1 of article XIII. (See 1 Cooley, Taxation (4th ed. 1924), §§ 36, 267, 268, pp. 115-117, 569-572; 51 Am.Jur., Taxation, §§ 16, 157, pp. 48-49, 209.) In *City of Glendale* v. *Trondsen, supra,* 48 Cal.2d 93, 101 et seq., we held that charges for rubbish collection did not come under section 1 of article XIII, pointing out that sewer service charges have been held not to constitute taxes. (48 Cal.2d at p. 102; see also *Louisville & Jefferson County Metropolitan Sewer Dist.* v. *Joseph E. Seagram & Sons,* 307 Ky. 413 [211 S.W.2d 122, 4 A.L.R.2d 588].)

The fact that the charge is now being included in the special assessment, whereas formerly it was collected separately, does not alter its character so that it becomes a tax subject to section 1 of article XIII, and there is substantial authority supporting the conclusion that a reasonable charge for sewer service may properly be included in a special assessment. The cases discussed below establish that the amount to be assessed is not limited to the cost of local installations but may be based on all elements contributing to the benefit of the landowners and may include a reasonable charge for the use of improvements which serve a larger area and for operation and maintenance.

*Etheridge* v. *City of Atlanta,* 167 Ga. 222 [145 S.E. 84, 85], is directly in point. In sustaining a sewer assessment in excess of the cost of constructing a lateral sewer and connections with private property, the court held that the cost of building, repairing, and upkeep of the city's trunk sewers and disposal plants should be taken into consideration and that a reasonable charge for the privilege of connecting with the trunk lines

could be added to the actual cost of the lateral sewers and property connections. *Roberts* v. *City of Los Angeles,* 7 Cal.2d 477, 490-494 [61 P.2d 323], held that the city may include its estimated costs of furnishing electric current, repairs, and supervision in an assessment for street lighting. In concluding that there should be no distinction between the cost of the services to be rendered and the cost of the mechanical contrivances installed as part of the improvement, the Roberts decision pointed out that the benefit to the landowners arose from the whole improvement, that the services were reasonably necessary, and that the fact that the city rather than a private party was to furnish them did not affect the district's duty to pay for them. (7 Cal.2d at pp. 490-494.)

There are also decisions holding that the use of sewage disposal plants and trunk mains is a special benefit to the land served and that the cost of such improvements may be met by special assessments. (*Federal Construction Co.* v. *Ensign,* 59 Cal.App. 200, 209 et seq. [210 P. 536] (pet. for hg. den.); *Davidson* v. *Sewer Improvement Dist. No. 4,* 182 Ark. 741 [32 S.W.2d 1062, 1064]; *City of Elmhurst* v. *Rohmeyer,* 297 Ill. 430 [130 N.E. 761, 764]; *Alley* v. *City of Lebanon,* 146 Ind. 125 [44 N.E. 1003, 1004]; *Gray* v. *Dingman,* 279 Mich. 62 [271 N.W. 552, 110 A.L.R. 274]; *Armstrong* v. *Sewer Improvement Dist. No. 1,* 201 Okla. 531 [199 P.2d 1012, 1015]; *Wm. H. Heinemann Creameries* v. *Village of Kewaskum,* 275 Wis. 636 [82 N.W.2d 902, 905]; see anno., Sewers as Local or General Improvement, 134 A.L.R. 895, 900 et seq.; *cf. Mills* v. *City of Elsinore,* 93 Cal.App. 753, 769 [270 P. 224], and *Kane* v. *Wedell,* 54 Cal.App. 516, 520-521 [202 P. 340] [assessments for pumping plants and wells of municipal water systems].)

The majority opinion relies on assessment cases which did not involve a charge for use of a city's sewer system or any other reasonable charge which the city was entitled to make for a service furnished by it. For example, *County of San Diego* v. *Childs,* 217 Cal. 109 [17 P.2d 734], involved expenditures which did not result in any benefit to the land of the district. The opinion contains the following general language: "The improvement must confer a special benefit upon the property assessed. [Citation.] The assessment can be levied only for the actual cost of the improvement 'and the local authorities cannot include in the assessment the expense of any other work than such as is necessary to complete the particular improvement in a reasonable and fair mode.'" The statement in the Childs case must be considered

in the light of the facts there before the court. It should not be used as a basis for invalidating a statute which authorizes inclusion in an assessment, as an incidental expense, of a reasonable charge for sewer service rendered by the city. This is particularly true where, as here, the landowners will in any event be required to pay the charge before they realize any benefit from the local facilities. As was held in *Roberts* v. *City of Los Angeles,* 7 Cal.2d 477, 490-491, 493-494 [61 P.2d 323], in determining the amount of an assessment, the costs of the whole improvement may be taken into consideration including the cost of reasonably necessary services. Insofar as the amount of the charge must bear a relationship to the cost of the service provided, there is nothing to show that the $400 per acre charge does not represent a fair apportionment of the city's cost in constructing and maintaining its sewer system, and the presumption in favor of constitutionality requires us to conclude that there has been such an apportionment.

The validity of the assessment is not affected by the fact that under section 64.19.1, the money collected from the district may be used to construct outlet sewers which do not serve the district. So long as the charge is reasonable and the district receives the benefits it has paid for, it is immaterial whether the money collected is kept in a separate fund earmarked for the costs of conferring the benefits or placed in the city's general fund and the costs paid therefrom.

The legislative bodies of both the state and the city have authorized a reasonable and practical method of collecting this charge. Their action is supported by the decisional law of this state and elsewhere.

I would hold that subdivision (i) of section 5024 of the Streets and Highways Code is constitutional and that it has been properly applied here.

Traynor, J., and Dooling, J., concurred.

Petitioner's application for a rehearing was denied January 31, 1961. Lillie, J. pro tem.,* participated therein in place of McComb, J., who deemed himself disqualified. Gibson, C. J., Traynor, J., and Dooling, J., were of the opinion that the application should be granted.

---

*Assigned by Chairman of Judicial Council.